## Phillips v. Phillips.

(Decided February 2, 1917.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1. Divorce—Discretion Given to Chancellor to Grant—Statutes.—The discretion given the chancellor by section 2121 of the Kentucky Statutes, to grant a divorce from bed and board for a cause other than the statutory causes which allow an absolute divorce, is neither arbitrary nor unlimited, but must arise from a state of fact showing that a separation is demanded for the interest and protection of the life, health or happiness of the party complaining, on account of the conduct and treatment of the one in default.

2. Husband and Wife—Fraud of Husband—Restoration of Property.— Dealings between husband and wife, whereby the husband obtains possession of the wife's property, without consideration, are looked upon with suspicion; and actual fraud need not be established to authorize a restoration of the property.

3. Husband and Wife—Conveyance by Wife to Husband—Restoration of Property to Wife.—Where a wife was induced to have real estate for which she paid the purchase price, conveyed to her and her husband jointly, by threats on his part of a separation in case she refused to comply with his request, a court of equity will require him to restore the property to his wife.

4. Husband and Wife—Lien of Husband for Purchase Money Paid.— Where a husband is required to convey to his wife an interest in land which he had obtained from her through undue influence, he will be given a lien upon the land for so much of the purchase money as he paid.

5. Husband and Wife—Rents—Husband Must Pay.—Where a husband, by the exercise of undue influence, obtained title and possession of land bought by his wife, and is required to surrender the land to her, he will be required to pay a reasonable rent for the land from the day the suit demanding the land was filed.

JACKSON & WOODWARD for appellant.

C. B. SHIMER and GEO. E. PHILLIPS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellant, Mary Doran Phillips, who was the plaintiff below, and John Phillips, the defendant below, were married on June 25, 1914. He was a widower, having seven children, the youngest being seven years of age.

For many years the plaintiff had been working and had saved $3,000.00; about $2,000.00 thereof being on deposit in the First National Bank, of Ludlow. Immediately after the marriage, Phillips and his wife agreed to buy a residence in West Covington, with her money. When the contract of purchase was made, Phillips paid $223.83 of the purchase price, as earnest money.

Mrs. Phillips, however, paid the balance of the purchase money of $3,000.00. At the suggestion of her banker, Clark, her attorney, drew a deed, dated July 6, 1914, conveying the property to the wife. But, when Phillips and his wife went to the lawyer's office to close the contract and pay for the property, Phillips insisted that he should also be named as one of the grantees, thus taking the title to himself and his wife, jointly. His wife, however, claimed that she had furnished practically all of the money and the title should be given to her alone; and, she insisted upon the deed being so drawn. He retorted, saying, "Mary, we are one; what's the difference?" She persisted, however, in having her way about the deed, saying that she had worked hard all her life for the money, and that the property should be in her name; whereupon, he again retorted, "We are married, and we are both going to live in it."

The attorney testified that after quite a wrangle in which Phillips became very angry and insisted that the title should be placed in their names, jointly; and his wife becoming very nervous, she finally yielded the point and permitted him to have his way. The attorney further testified that Phillips was very firm, insisting and unyielding, declaring that he would not proceed with

the trade unless he should be named as a grantee. As Phillips had little or no financial interest in the transaction, this threat could only mean that he would prevent the purchase of the house unless a half interest therein should be conveyed to him.

To make up the purchase price, Mrs. Phillips borrowed $800.00 from the bank, securing its payment by a pledge of her stock in a building association. This debt remains unpaid.

The family moved into the house thus purchased about two weeks after their marriage, Mrs. Phillips becoming the housekeeper. Two of the older children were working for small wages, and Phillips was working as a freight handler for $60.00 per month. In addition, he owned another piece of real estate worth about $1,000.00 or $1,500.00, from which he collected $9.00 per month rent. He did not convey a half interest in this house to his wife.

Mrs. Phillips, however, persisted in the assertion of her rights by asking her husband to convey his interest in the West Covington property to her; but he was unyielding. Two of Phillips's older daughters testified that Mrs. Phillips was an excellent housekeeper. Her husband, however, constantly complained that she did not make the money go far enough in her housekeeping, and that she was not economical. Shortly before the separation Phillips deposed his wife as housekeeper by withholding from her all the money expended in keeping the house, and by taking upon himself the duties of paymaster.

Finally, on June 25, 1913, one year after the marriage, she left their home and resumed her former work.

On August 11, 1915, she filed this action in equity against her husband, alleging that he had not treated her as a wife, in that he had refused to permit her to run the household, or to give her any money to do so; that she had maintained herself during the year of their married life, and that she and the defendant had not been able to live together happily; that she had bought the West Covington property with her own money, saved by her prior to their marriage; that a deed was prepared conveying it to her, and that defendant had refused to have anything to do with her unless she should put the property in their joint names; and, that she became so frightened by reason of the threats and talk of the defendant that she finally permitted the

deed to be made out in the name of both plaintiff and defendant as grantees through the duress and threats of her husband. She asked for a judgment of divorce from bed and board, and that the defendant be compelled to convey to her all the interest he had or claimed in the West Covington property, above described.

By his answer Phillips traversed the petition, in every respect, in so far as it related to the purchase of the property. By way of counter-claim, however, he asserted that he had refused to allow his wife to have the money with which to run the house, because she was not spending the money economically. And, he further alleged in his counter-claim that he had paid $20.00 for a coat for his wife; $223.83 on account of the purchase price of the house; $23.00 interest to the bank; $3.00 for screens for the house; and $40.00, the cost of building a fence and shed on the rear end of the lot. By way of relief he asked that he be allowed to live and stay in the house without being compelled to pay any rent, until the disposition of the suit, and resisted his wife's motion for the appointment of a receiver to collect the rent therefor.

By an amended petition tendered on December 20, 1915, the plaintiff alleged that her husband had habitually behaved toward her, for not less than six months, in such cruel and inhuman manner as to indicate a settled aversion toward her, and to destroy permanently her peace and happiness. She prayed for the relief asked in her original petition.

The court, however, improperly refused to permit the amended petition to be filed; and, upon a hearing of the case, the petition was dismissed, and Mrs. Phillips appeals.

It is earnestly insisted by the appellee that the plaintiff failed to make out her case, in that she failed to sustain the charge of duress. This action is brought under section 2121 of the Kentucky Statutes, which reads as follows:

"Judgment for separation or divorce from bed and board may also be rendered for any of the causes which allow divorce, or for such other cause as the court in its discretion may deem sufficient. Pending an action for any divorce the court may allow the wife maintenance. A divorce from bed and board shall operate as to property thereafter acquired, and upon the personal rights and legal capacities of the parties, as a divorce

from the bond of matrimony, except that neither shall marry again during the life of the other, and except that it shall not bar curtesy, dower or distributive right. Such may be revised or set aside at any time by the court rendering it. Upon final judgment of divorce from the bond of matrimony the parties shall be restored such property, not disposed of at the commencement of the action, as either obtained from or through the other before or during the marriage in consideration thereof.''

It will be noticed that the chancellor is thereby authorized to grant a divorce from bed and board not only for any of the causes which would allow an absolute divorce, but also for such other cause as the court in its discretion might deem sufficient.

The discretion thus conferred is not, however, to be understood as arbitrary or unlimited, but a sound legal discretion, which is only to be exercised for such causes as may be deemed sufficient, when considered with a just and reasonable regard to the rights and obligations of both parties. Shrock v. Shrock, 4 Bush 684. The plaintiff may rely upon the statutory grounds, or any of them, and may seek an absolute instead of a qualified or limited divorce. Should the court conclude upon the hearing of the case that, although the grounds for an absolute divorce are not fully sustained, yet, if the interest of the parties, their infant children, and the good of society demand it, he might, under the statutory power conferred in this jurisdiction, grant a divorce from bed and board. Evans v. Evans, 93 Ky. 510; Zumbiel v. Zumbiel, 113 Ky. 844; Burns v. Burns, 173 Ky. 105.

In construing the statute in Irwin v. Irwin, 96 Ky. 318, this court said:

''This discretion is neither arbitrary nor unlimited, but must arise from a state of fact showing that a separation is demanded for the interest and protection of the life, health or happiness of the party complaining, on account of the conduct and treatment of the one in default.''

And, although the husband's conduct in the Irwin case could not be said to be inhuman, his coldness and indifference toward his wife for several years preceding their separation was such as rendered her life almost intolerable, and authorized a judgment divorcing her from bed and board.

Ramsey v. Ramsey, 162 Ky. 741, is to the same effect.

The acts of dereliction charged against the defendant are, his acts in connection with the taking of the deed to the West Covington property above narrated; his depriving her of the management of the household and humiliating her by refusing to let her handle any of the money for that purpose, although the proof shows that she was performing that service well; and, his mistreatment and abuse of his wife by applying vulgar and opprobrious epithets to her.

There is testimony to the effect that defendant grossly insulted his wife, by repeatedly applying to her an epithet too obscene to be mentioned, and often in the presence of his children. It is contended, however, that this language was used concerning his wife after the separation. It appears, however, from the testimony of defendant's daughter that on at least one occasion, and possibly more, the defendant made use of this language before the separation.

There can be little doubt from the reading of this proof that appellee's conduct in connection with the making of the deed was not prompted by altruistic motives. Indeed, it is difficult to avoid the conclusion that he married the plaintiff for the double purpose of obtaining a housekeeper to raise his family of children, and to obtain possession of what money she had. The latter object was attained within two weeks after the marriage. His conduct in that connection was most reprehensible. The relief asked in his counter-claim is confined to the prayer that he be allowed to live in the house bought with his wife's money without being compelled to pay her any rent therefor; and, as the case has turned out, he has so lived without paying rent for more than eighteen months, although he has a house of his own from which he collects rent.

Furthermore, the plaintiff is paying interest on the $800.00 which she borrowed to make up the purchase money.

From these facts it is apparent that the defendant has entertained little or no regard for his wife, at any time, since their marriage; his conduct has been such as to make it impossible for her to live happily with him, and that a separation is demanded for the interest and protection of the health and happiness of the plaintiff, who is in no way at fault.

The circuit court should have granted the plaintiff a divorce from bed and board. McClintock v. McClintock, 147 Ky. 409, 39 L. R. A. (N. S.) 1127; Wallace v. Wallace, 171 Ky. 192.

In answer to defendant's contention that the plaintiff has not made out a case that would justify the chancellor in requiring the defendant to release his title to the West Covington property, it would seem to be sufficient to say that the same proof which we have deemed sufficient to justify a divorce from bed and board to the plaintiff, is sufficient to require the defendant to release the property.

Dealings between husband and wife whereby the husband obtains possession of the wife's property, without consideration, are looked upon with suspicion; and, it does not require a very high degree of proof to authorize a restoration of the property. Actual fraud need not be established. Golding v. Golding, 82 Ky. 51. If an absolute divorce had been granted the plaintiff, under the statute, *supra,* it would have been the duty of the court to restore to her the property that she is now seeking to recover. The statute, however, by its terms, provides for a restoration only in cases where an absolute divorce is granted; it does not give the right of restoration where the relief granted is only a divorce from bed and board. Orr v. Orr, 8 Bush 160.

But the fact that the statute does not require a restoration where the divorce is from bed and board only, does not prevent the plaintiff from recovering her property where it has been obtained from her by the fraud, duress or undue influence of her husband, or change the rules of law or evidence applicable to such cases.

The rule in such cases is well stated in 13 Ruling Case Law, page 1367, as follows:

"It is recognized that the most dominant influence of all relations is that of husband and wife, and from an early date the courts have jealously scrutinized transactions between them to prevent a wife from being overreached or defrauded by the undue influence or improper conduct of her husband; and in order to sustain a transaction by which the husband secures for his benefit the property of his wife, the law imposes the burden on him to show that the arrangement was fair and conscientious and that no improper use was made of the

confidence arising out of the marriage relation. And *a fortiori* if a wife is induced to convey her real estate to her husband through the medium of a third person, by threats on his part of a permanent separation, and by such persistent importunities that the peace of the wife is destroyed, a court of equity will set such conveyance aside, at the suit of the wife."

See Meldrum v. Meldrum, 15 Colo. 478, 11 L. R. A. 65, and note; Heckman v. Heckman, 215 Pa. St. 203, 114 Am. St. Rep. 953; and notes in 21 Am. St. Rep. 102, and 16 L. R. A. (N. S.) 1088.

The case at bar comes within the rule above announced, since it is clearly shown from the testimony of Clark, the attorney who drew the deed and was present when it was executed, that the defendant acted in such a way that his wife had reasonable grounds to believe, and doubtless did believe, that he would desert her in case she should refuse to have him named as a grantee in the deed.

In Golding v. Golding, 82 Ky. 55. the court said:

"The chancellor, at the instance of the wife, will scrutinize closely the conduct of the husband and the motive influencing the wife to part with her estate, and when the husband, having won the affections of his wife, has such an influence over her as to make her entirely subordinate to his will, the chancellor will not undertake to adjudge that the parties are dealing at arm's length, and hold the wife to the contract, as he would a stranger. The husband will not be allowed to take advantage of the marital relation, so as to invest himself with title to the wife's estate, and then insist upon her ability to resist his importunities, as a reason for making her stand by the executed agreement, investing him with title."

We conclude, therefore, that the plaintiff was entitled to a restoration of her property; any other conclusion would work a manifest injustice.

The defendant, however, should be allowed a lien for the $223.83 which he paid as a part of the purchase price; $23.00 interest paid for the plaintiff; and the $40.00 for the fence and shed, in so far as they enhanced the salable value of the property, without interest, however, upon either sum; but he will be allowed nothing for the other items furnished by him, which must be treated as a part of his living expenses. Furthermore,

the defendant should be charged with a reasonable rent for the house from August 11, 1915, the day the petition was filed.

Judgment reversed with instructions to the chancellor to enter a judgment as above indicated.