Donald C. WHALEN, Appellant,

v.

Gerry T. WHALEN, Appellee.

Gerry T. WHALEN, Cross-Appellant,

v.

Donald C. WHALEN, Cross-Appellee.

Court of Appeals of Kentucky.

May 11, 1979.

Clyde L. Stapleton, Trimble, Stapleton, Reaves & Slone, Lexington, for appellant and cross-appellee.

Weldon Shouse, Shouse & Burrus, Lexington, for appellee and cross-appellant.

Before COOPER, LESTER and WILHOIT, JJ.

LESTER, Judge.

The parties to this action were married March 6, 1946, and had two children who

were emancipated. Sometime prior to April 30, 1976, the wife filed what was to be an uncontested petition for dissolution of marriage together with an agreed order and property settlement.

On the last mentioned date, the original case was set for hearing, but on April 26, 1976, the parties entered into a reconciliation agreement which resulted in the dismissal of the pending divorce action. The agreement contemplated a resumption of the marital relationship, but it also provided for a distribution of their property should the reconciliation fail.

Donald testified that part of his work involved the examination of legal documents, and he expressed a familiarity with them. He further stated that he was fully aware of the contents of the agreement and was under no disability during either the negotiations or at the time of execution. From April, 1976, until September, 1977, the parties continued the relationship, but appellant's mistreatment of Gerry caused her to refile a complaint requesting enforcement of the 1976 agreement which, with certain modifications, the court did. Upon appeal, Donald urges that the contract fails as a separation agreement pursuant to KRS 403.180 since it was entered into attendant upon reconciliation rather than separation, and its provisions were never executed before reconciliation. Moreover, he argues that the document is contrary to public policy in that it fosters divorce actions or in the alternative, if it is valid, then its terms are unconscionable and it should be set aside. In a manner of speaking, it appears Donald's position is that under existing statutes reconciliation agreements are not recognized. We disagree.

 KRS 403.180 neither addresses itself to nor affects or prohibits reconciliation agreements. It is axiomatic in this jurisdiction that the law favors any steps parties may take to settle litigation, especially those which have the effect of reuniting a family. Appellant relies heavily upon *King v. King*, Ky., 274 S.W.2d 656 (1954), and *Gordon v. Gordon*, Ky., 335 S.W.2d 561 (1960), to support his position that once a

reconciliation agreement has been executed resumption of the marital relationship nullifies the contract. We read those cases as also being authority to the contrary, for in *Gordon*, quoting from *King*, the court found that it should look to the intention of the parties to determine whether it was intended that the reconciliation should nullify the property settlement. See 27B C.J.S. *Divorce* § 301(4) at 417, 418. In domestic relation matters, reconciliation means to us that the parties resume cohabitation, and if appellant's theory were correct, then we are unable to understand why the Supreme Court recognized such agreements four years after *King* when it stated in *Clark v. Clark*, Ky., 425 S.W.2d 745, 748 (1968):

> We do not mean to intimate that all separation or property settlement or *reconciliation* agreements are unenforceable, . . . . (emphasis added)

In *Clark*, the document provided in unequivocal terms "the parties shall be divorced" and was interpreted as being contrary to public policy as facilitating the obtainment of a divorce. The consideration for that document was divorce. In the case at bar, the document provided that the agreement, with two exceptions, would become operative "in the event either should hereafter desire and seek a dissolution of their said marriage." At the time of execution, Donald and Gerry were separated and actually living apart and were but four days away from a hearing of their dissolution case. The consideration was reconciliation which took place and was followed by dismissal of civil action No. 76–548 upon the docket of the court. As Professor Petrilli succinctly put it in his *Kentucky Family Law* § 19.18, p. 231 at 232 (1969), "[j]ust as the law allows a trial separation, it provides for a trial reconciliation. Thus, the parties being separated, may agree to reconcile on condition that if it does not work a separation agreement entered into at the time of reconciliation then becomes legally effective as to support and custody." We see no reason why it should not be effective as to all matters provided for therein. These types of agreements should be closely scru-

tinized by the court for overreaching by either party, and in this appeal, the circuit court conducted an in-depth examination of the provisions and found no impropriety.

■ Insofar as the public policy contention is concerned, we do not believe that the legislature by its enactment of the Uniform Divorce Act or the courts of this jurisdiction have abandoned the sound reasoning of *Hite v. Hite*, 136 Ky. 529, 124 S.W. 815 (1910), based upon *Woodruff v. Woodruff*, 121 Ky. 784, 90 S.W. 266, 91 S.W. 265 (1906):

> "[I]t simply secured to her something in consideration of her foregoing the rights she then had. * * * It (the law) favors the reconciliation of husband and wife. A contract for the re-establishment of a ruined home is one which equity is swift to approve. Whether the contract in question is contrary to public policy is not to be determined from one clause of it, but from the whole instrument. The contract as a whole does not tend to produce estrangement between husband and wife. The contract brought them together, and, taken as a whole, it is in aid of the marital relation, and is therefore not opposed to public policy, but in accord with it." Thus its execution is sanctioned by the law, and it should be upheld, unless appellant's contention that he was deceived in its execution is supported by the proof.

The foregoing finds support in the texts. See 24 Am.Jur.2d *Divorce and Separation* § 17 at p. 191.

■ Much is made of the fact that a provision of the agreement was never executed in that the parties failed to sell their home and purchase another, but if any defect that failure to act might have been, the circuit court corrected it in its modification of the provision in its final judgment.

■ Donald says the contract is unconscionable. The trial judge said:

> The provision with regard to the insurance trust has not changed in both contracts (meaning the contract filed with the first petition and the reconciliation agreement filed with the second) with the exception of the amount of coverage; I would enforce that. There has been a change in the amount of alimony. At one time in the original settlement contract the figure had been eight hundred; that figure had been changed to six hundred, initialed by the parties. In the contract entered into by the parties to reconcile the marriage, the amount was fixed at seven hundred per month until the death of either the first or second party or until the second party remarries. I will uphold the $700 alimony payment. The paragraph four of what I will describe as the reconciliation agreement, which permitted the respondent to keep as his own personal property, such automobile as he may have, boat and any and all other stocks, bonds or properties that he may own at the time of the dissolution, I will give effect to.
>
> The thing that is causing me the most concern in the entire case is that provision of the reconciliation agreement which provides that the property at No. 1 Lansdowne Estates would be sold, that a condominium or townhouse would be purchased, and that after paying indebtedness, cost of sale, etcetera, if any monies were left over, that these monies would be divided between the parties. This part of the contract, of course, was never executed, apparently by a mutual agreement of the parties. I believe that it would be inequitable to require that the respondent convey to her, or that the Court order that he convey to her, his entire interest in this property. So it will be my ruling that the property at No. 1 Lansdowne Estates be sold, that after the expenses of sale and the payment of the mortgage indebtedness, that up to the sum of $60,-000 be used for the purpose of providing Mrs. Whalen another residence of her choice, which appeared to be the contemplation of the parties at the time the settlement agreement was entered into.
>
> While this Court would not have awarded an additional sum of $10,000 to be paid as alimony had no agreements been presented to this Court, I doubt that I can do

anything about it except to enforce that part of the reconciliation agreement which provides that he would pay this sum since I believe Mr. Whalen to be sufficiently acquainted with contracts with business and financial affairs to realize what he was doing. I can appreciate the fact that he may have been anxious to have his wife back with him. He may have gone further than he should have in accomplishing this purpose, but I don't think I can do a whole lot about it. The only thing left is the household goods and the furniture. Had the house at No. 1 Lansdowne Estates been sold, as contemplated by the reconciliation agreement, had the parties purchased a townhouse or condominium, it is quite conceivable that not all of the household goods and furnishings would have been required for the new residence; therefore, it is a part of this findings of fact and conclusions that he be awarded a sufficient amount of household goods to permit him to at least furnish a one-bedroom apartment.

Since the Court is awarding her, by this action, sufficient properties and alimony, she will be required to pay her own attorney's fees.

Again, I can't protect him from the consequences of his contract, and since the contract provided that she would have the car she was driving at the time of the dissolution, she may be awarded the automobile, and I'm going to give her the car and direct he pay the other debts.

The Court is of the opinion that in addition to the income shown on the tax returns, which have been filed of record, that Mr. Whalen is entitled to and does receive other benefits which have a value of several thousand dollars per year, such as insurance, entertainment expenses, which I have no doubt includes many, many personal items of expense, an automobile, which I have no doubt he uses not only for business but for personal use, and that while he has, according to the evidence an $18,000 per year draw that his income is substantially more than this and that the possibilities of income being

substantially more than each of the years reported on the tax return, with the exception of the one year in which he earned $141,000, will be substantially greater than that average sum.

We agree with the circuit court and must remind appellant that in the event we did not so agree and remanded this case for further consideration, the court could consider the element of fault in determining how much maintenance should be awarded, *Chapman v. Chapman*, Ky., 498 S.W.2d 134, 138 (1973), and based upon the record herein that might be to his disadvantage.

Donald filed in the record what he denominated a list of "Total Marital Debts" of $97,350.00 and then argues that he is saddled with $77,850.00 worth of liabilities. At no place in the transcript are we advised just what the "Total Marital Debts" are, for we believe appellant was less than candid with the court when he testified:

Q. You have had income, as you have testified to the extent of $18,000.00 a year for 1977?

A. That was my salary for 1977, yes, sir.

The income tax return for 1977, filed subsequently to the giving of the evidence, reflected that Whalen had an income of $106,304.00 for 1977. For that matter, his income from 1973 through 1976 ranged from $38,700.25 to $141,919.06. We note that Donald is vice-president of Whalen Erecting Company of Kentucky, Inc., which is a steel erecting and manufacturer's agent firm, employing approximately three hundred people. It is a closely held corporation owned by appellant's family. Appellee is a fifty-one-year-old housewife with but a high school education who has never worked and whose opportunities to obtain gainful employment are limited by her physical condition.

■ Appellant's remaining contention concerning a jury trial is without merit. KRS 403.010.

■ Upon cross-appeal, Gerry, in essence, asks the court to take into consideration her former husband's inheritance from his mother and based thereon increase the sums

she is to receive under the agreement. We believe that she is adequately and equitably provided for by the terms of the agreement and the court's judgment based thereon. However, in the event that we might have agreed with appellant and found the contract violative of public policy then upon remand for a new trial and division of property the circuit court could have properly considered the prospects of Donald's future inheritance. Compare, *Walden v. Walden*, Ky., 486 S.W.2d 57 (1972).

The judgment is affirmed on appeal and cross-appeal.

All concur.