**Arthur DURHAM, Appellant,**

v.

**Gobel COPLEY, Jr., and Workers' Compensation Board, Appellees.**

**No. 90–SC–912–WC.**

Supreme Court of Kentucky.

Oct. 24, 1991.

Rehearing Denied Dec. 19, 1991.

Michael R. Dowling, George C. Howell, Ashland, for appellant.

Donna S. Colley, Vanantwerp, Monge, Jones & Edwards, Ashland, L.T. Grant, Comm'r Dept. of Workers' Claims, Frankfort, for appellees.

COMBS, Justice.

The appellant in this Workers' Compensation case is a middle-aged man with an eighth grade education and no occupational training. His entire work life has consisted of manual labor as a mechanic's helper or mechanic. He had worked for the employer as a helper and mechanic for about five years when, as alleged in his Form 11, he sustained an injury to his neck and shoulder.

Prior to the alleged injury the employee had experienced some problems with his arms and hands. Nevertheless he had been a hard and steady worker. On December 12, 1985, while assisting in the installation of an engine in one of the employer's vans, and while on his knees beneath the van attempting to align the engine with the transmission, he experienced a rather sharp pain in the neck and shoulders. A few days later, still experiencing pain, Durham went to the emergency room at King's Daughters' hospital in Ashland where he was treated by a thoracic surgeon, Dr. Cheng. The doctor diagnosed the problem as muscle sprain in the areas involved, and prescribed conservative treatment and physical therapy. Appellant still wears a Tenz unit to help relieve his pain. Although appellant does not recall telling the emergency room staff about a thyroid problem he had experienced years before (which was to become a significant issue in the case), the word "thyroid" does appear

as past medical history in the emergency hospital record filed by the appellee.

The appellee employer promptly notified its carrier, who commenced paying temporary total disability benefits. These payments continued until the carrier had appellant examined by an orthopedist, Dr. Rothrock Miller, of Lexington, Kentucky. Dr. Miller found some straightening of the cervical spine which he attributed to muscle spasm resulting from cervical strain or sprain. He discounted that condition as a source of the pain, however. He found no evidence of arthritis (which had been found by another physician employed by the carrier). Dr. Miller did suggest continued physical therapy. Because Durham had a normal range of motion it was thought that he could return to work.

Dr. Parr also testified for the carrier, and though he observed that plaintiff was in a very uncomfortable condition, he could find no abnormalities to account for the problem. Unlike Dr. Miller, Dr. Parr found x-ray evidence of some arthritic spurring in the cervical spine. When questioned as to the possible involvement of the median nerve, he testified that there was no reason to suspect any involvement of this nerve, and that if a nerve conduction test were to be performed it would prove negative. A conduction test later made by another specialist did reveal diminution in the median nerve serving the affected area. Although Dr. Parr could not account for the complaint of pain, he did not deny the fact that the appellant was suffering intense pain. Like Dr. Miller, he found a normal range of motion and therefore thought appellant could return to work. He bolstered his opinion by the fact that he noticed ingrained dirt, grease and oil in the appellant's hands. He also testified that he was not advised of any prior thyroid condition.

Dr. George C. Borst, III, who concentrates in endocrinology and internal medicine, and whom the ALJ was to find persuasive, testified on March 9, 1987. The thrust of his testimony was that Durham suffered from carpal tunnel syndrome, which may have many causes (including trauma) but which in this case probably resulted from untreated hypothyroidism. Subsequently however, in a letter to the carrier's attorney dated September 28, 1987, Dr. Borst stated:

I have reviewed the records of Dr. Powell and there seems to be evidence of Thoracic Outlet Syndrome in addition to Carpal Tunnel Syndrome. It is possible the hypothyroidism may be exacerbating this condition and making his symptomology worse. In this regard the patient would be well advised to continue follow-up treatment with regard to his hypothyroidism. Until the patient is adequately treated for his hypothyroidism for several months it will be *impossible to determine if all or part of his symptoms are related to his untreated hypothyroidism.* [Emphasis added.]

While many of the doctors felt that the thyroid was a causative factor in his overall problem, none testified that they had asked Durham about it. Questioned by the carrier's counsel in this regard, appellant testified freely and at length. He stated that he had stopped taking thyroid medication because it had not helped him; this had occurred a long time before the episode at the employer's premises. Upon learning of the possible role of his thyroid condition, the appellant resumed taking thyroid medication, and his counsel unsuccessfully requested the Administrative Law Judge to hold the case in abeyance to see if there would be any improvement. The carrier strenuously and successfully objected to this motion. (Subsequent events have proved that there was some improvement initially but that appellant soon returned to the condition that existed before he resumed medication.)

On May 16, 1988, Durham was examined by Dr. T.R. Love, an orthopedic surgeon. Dr. Love performed a right shoulder arthrogram, and concluded that Durham was suffering from a torn rotator cuff, and that the lesions would need surgical intervention to repair. He also found that this condition was the direct result of the injury sustained on December 12, 1985. These conclusions were reported to the carrier's claims service representative on July 5, 1988. But appellant's counsel was not notified of these findings until receipt of a

letter from Dr. Love dated September 12, 1988.

In the interim, on July 25, 1988, the ALJ, without benefit of Dr. Love's report, dismissed the claim. Apparently ignoring the record evidence of the payment of temporary total disability benefits, the ALJ said: "The record is void of any permanence, nor is there sufficient proof to sustain temporary total disability." The ALJ further found: "Dr. Borst's testimony is noted as being more persuasive as to plaintiff's condition. The diagnosis of carpal tunnel syndrome or thoracic outlet syndrome is insufficient to associate that condition or conditions of plaintiff to his employment."

Upon receipt of Dr. Love's report, some seven weeks after this decision, appellant's counsel immediately filed a motion to set aside the prior rulings and to remand for evidentiary hearings on the grounds of mistake and/or newly discovered evidence. The carrier resisted, and the motion was overruled on the grounds that an appeal to the Full Board was pending.

On November 17, 1989, the Full Board, in a fourteen page opinion, affirmed the actions of the ALJ. It dismissed the appeal for failure to name the ALJ as a party respondent, and, notwithstanding the fact that the carrier had received notice and commenced payment of temporary total disability benefits, the Board found that employee had failed to give timely notice to his employer of his injuries and claim. The Board did overrule the ALJ's ruling on appellant's motion to reopen, noting that the right to file a motion to reopen is in addition to, and not dependent on, the right of appeal. Notwithstanding this error, feeling that the ALJ had arrived at a correct decision, the Board affirmed the dismissal. Regarding the motion to reopen, the Board stated:

> It is to be noted that Dr. Love's report is dated May 16, 1988, prior to the ALJ's decision in July. Further, there is no explanation as to why such evidence could not have been discovered with due diligence and presented before the final determination of the claim by the ALJ. Consequently, the Motion to Reopen was properly denied by the ALJ even though the reason therefor was erroneous.

In affirming, the Court of Appeals echoed the Board:

> [W]e find that Durham attempted to have a claim which was decided on July 25, 1988, reopened based on a medical report which was rendered May 16, 1988. With the exercise of ordinary prudence and diligence, the report could have been produced prior to the ALJ's final determination. Therefore, Durham did not present newly discovered evidence and it could not support a basis for reopening. KRS 342.125. It is on this basis that we affirm the opinion and order of the Board.

■ This is egregious error and constitutes a manifest injustice. Dr. Love did *examine* Durham on May 16, 1988, but his letter to the carrier's claims representative was dated July 5 and not May 16—but still before the ALJ's decision. But most importantly, the Board failed to note that the *employee's* counsel was not notified of the torn rotator cuff until he received the letter of September 12, 1988—seven weeks *after* the ALJ's decision to dismiss the claim. The reason that the appellant could not produce the rotator cuff report prior to the final decision of the ALJ in July, 1988, is obvious and compelling.

■ With respect to temporary total disability benefits, the record demonstrates that the carrier paid such benefits to the appellant for a period of several months. The fact that this important aspect of the case was not attacked by the appellee constitutes an estoppel to deny temporary total disability benefits.

We reverse the Court of Appeals with directions that the case be remanded to the Administrative Law Judge to hear evidence concerning the torn rotator cuff, to consider such evidence in conjunction with the other evidence of record, and to determine the occupational impairment, if any, resulting therefrom. If the evidence establishes occupational disability the stipulations as to wages and hours are to be set aside. Benefits, if any, are to be determined from the evidence.

LAMBERT, LEIBSON, REYNOLDS and SPAIN, JJ., concur.

WINTERSHEIMER, J., concurs in result by separate opinion, in which STEPHENS, C.J., joins.

WINTERSHEIMER, Justice, concurring.

I concur with the result achieved by the majority on the basis that there is a manifest injustice resulting from a palpable error. As I stated in my dissenting opinion in *Deemer v. Finger*, 817 S.W.2d 435 rendered by this Court August 29, 1991, this Court has broken new ground in regard to rehearing as provided by CR 76.32, in that it now applies a manifest injustice or palpable error standard in interpreting the opening phrase of the rule, "Except in extraordinary cases where justice demands it ..." It is refreshing to see the development of a manifest injustice standard, and it is useful to the legal profession as a whole to recognize the availability of such a philosophy.

In this case, this Court unanimously affirmed the decision of the Court of Appeals in a memorandum opinion rendered March 14, 1991. A review of that unpublished memorandum opinion indicates that all issues were considered at that time. Now this Court unanimously has changed its mind on the basis of manifest injustice.

The critical issue in the motion to reopen is the allegedly newly discovered evidence consisting of a report by Dr. Love concerning a tear in the right shoulder rotator cuff. Customarily, newly discovered evidence sufficient to sustain a motion to reopen must be such evidence as will affect the ultimate outcome, which evidence could not have been discovered by due diligence and presented for consideration prior to the ultimate decision. *Massey v. McKinley*, Ky.App., 690 S.W.2d 131 (1985).

In any event, for the reasons stated above, I concur with the result achieved by the majority.

STEPHENS, C.J., joins in this concurring opinion.