Marilyn R. SHRABERG, Appellant,

v.

David SHRABERG, Appellee.

No. 95–SC–992–DG.

Supreme Court of Kentucky.

Feb. 27, 1997.

Harry B. Miller, Jr., Catesby Woodford, Judith K. Jones, Miller, Griffin & Marks, P.S.C., Lexington, for appellant.

James A. Shuffett, Lexington, for Appellee.

LAMBERT, Justice.

We granted discretionary review to consider the scope of trial court discretion with respect to holding separation agreements unconscionable pursuant to KRS 403.180(2). We must also consider whether or to what extent the trial court should attempt to "preserve" those provisions of the separation agreement which are not unconscionable while invalidating those which are offending.

In January of 1992, appellant and appellee, the parents of five minor children, commenced proceedings to terminate their seventeen-year marriage. Without advice of counsel, appellee, a psychiatrist, signed a separation agreement which had been prepared by appellant's counsel. Significant provisions of the agreement placed custody with appellant with appellee being granted visitation. Appellee agreed to pay $8,000 per month in child support. While child support was to be reduced by $1,000 per month per child upon each child's graduation from high school, in no event was child support to be reduced below $5,000 per month until after the last child had graduated from high school. Appellee further agreed to pay appellant $5,500 per month in maintenance with this sum to be reduced to $1,500 per month when and if the marital residence was sold. Under the agreement, appellant was entitled to remain in the marital residence with the children and to receive most of the household goods and a vehicle. Appellee was to receive his medical practice, his retirement account, an automobile, and a $30,000 wine collection. Appellant was required to make the monthly mortgage payment of $5,200. In addition to the foregoing, appellee agreed to maintain medical and dental insurance for the children so long as they remained his dependents, to provide for their educational expenses, including post-secondary education, and to maintain a policy of life insurance on himself of at least one million dollars for benefit of his children and former spouse.

After the separation agreement had been in effect for about nine months, appellee sought to have it set aside on grounds of unconscionability. In December, the trial court heard evidence on the issue of unconscionability as well as other issues in the marriage dissolution action. Thereafter, the court rendered an order declaring that in view of the economic circumstances of the parties and other relevant evidence, the separation agreement was unconscionable. Later, the court rendered a decree of dissolution of the marriage and in its decree granted joint custody with appellant making decisions as if she were sole custodian. Child support was set at $3,000 per month with appellee also being required to provide health and dental insurance. Appellant was granted maintenance of $4,500 per month for twenty-four months, $3,000 a month for the next thirty-six months, $2,000 a month for the next twenty-four months, and $1,500

per month for the next seventy-two months. The Court determined that the marital residence should be sold within six months and the net proceeds divided equally between the parties. The other items of property were divided.

In the Court of Appeals appellant claimed trial court error in the determination that the separation agreement was unconscionable. Alternatively, she contended that the court had erred in rejecting the agreement in its entirety. Initially, the Court of Appeals reversed the trial court on grounds that this case was not distinguishable from *Peterson v. Peterson*, Ky.App., 583 S.W.2d 707 (1979), and that the agreement was nothing more than a bad bargain for appellee. On petition for rehearing, the Court of Appeals reversed itself. After quoting the statute and discussing relevant decisions, the Court of Appeals held that the separation agreement was indeed manifestly unfair or inequitable. Of particular importance, .the Court of Appeals stated:

> Evidence was presented supporting the trial court's finding that David [appellee] earned $200,000 annually with an after-tax income falling significantly below that. Thus, considering the after tax income level and the fact that the agreement obligated David to pay in excess of $160,000 annually, the circuit court did not err in ruling the agreement unconscionable and thus unenforceable.

Slip opinion at 6.

■ In this Court appellant first contends that the Court of Appeals lacked grounds to grant rehearing pursuant to CR 76.32 and erroneously reversed itself. While the second and final opinion of the Court of Appeals did not disclose its reasons and grounds for granting rehearing, the petition for rehearing had claimed error in the factual statements of the original opinion and error in its application of decisional law. We would assume, therefore, that the Court of Appeals granted rehearing on the bases urged in the petition.

■ In any event, however, CR 76.32 grants an appellate court considerable discretion with regard to rehearing. Subsection (1)(b) begins with an exception for extraordinary cases when justice demands it and then identifies as grounds for rehearing circumstances where the court has "overlooked a material fact in the record, or a controlling statute or decision, or has misconceived the issues presented on the appeal or the law applicable thereto." We can hardly imagine a statement of authorized grounds in a rule which more broadly invites the exercise of the court's sound discretion. Our recent decision in *Durham v. Copley*, Ky., 818 S.W.2d 610 (1991), does not restrict appellate courts in their exercise of discretion on petition for rehearing. That case merely held that upon the discovery of significant new evidence, the extraordinary case standard had been satisfied. In our view, CR 76.32 confers upon the Court of Appeals or this Court discretion to grant rehearing when it believes the requirements of the rule have been met. This Court will not undertake to review the Court of Appeals' exercise of its discretion with regard to granting rehearing. Where parties believe the Court of Appeals has erred in granting rehearing, their remedy is to bring the merits of the case to this Court.

■ We now turn to the central issue in this case, whether the Court of Appeals erred in affirming the trial court determination that the separation agreement was unconscionable. The necessary point of beginning in our analysis is the statute relating to separation agreements. In relevant part, KRS 403.180(2) and (3) is as follows:

> (2) In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except those providing for the custody, support, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties, and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.

> (3) If the court finds the separation agreement unconscionable, it may request the parties to submit a revised separation agreement or may make orders for the disposition of property, support, and maintenance.

In general, this statute invites parties to wind-up their own affairs by entering into a comprehensive agreement. However, in recognition of the intimate nature of the relationship and the ability of a strong and persistent spouse to overwhelm the other spouse, the statute broadly directs the trial court to review the agreement for unconscionability. In effect, the law has established a measure of protection for parties from their own irresponsible agreements. Upon a determination of unconscionability, the trial court may request submission of a revised agreement or make its own determination as to disposition of property, support, and maintenance.

Long before enactment of KRS 403.180, the courts of this jurisdiction had a broad supervisory role with respect to agreements between spouses. In *Phillips v. Phillips,* 173 Ky. 608, 191 S.W. 482 (1917), we said, "Dealings between husband and wife whereby the husband obtains possession of the wife's property without consideration are looked upon with suspicion; and it does not require a very high degree of proof to authorize a restoration of the property. Actual fraud need not be established." 191 S.W. at 485. Similarly, in *Clark v. Clark,* 301 Ky. 682, 192 S.W.2d 968 (1946), we said "this Court has held that separation contracts are to be scrutinized with great care and that such a contract should not be upheld by the courts if it is unfair to the wife and made at a time when the wife is laboring under great mental distress." (Citations omitted.) 192 S.W.2d at 970. While these and other older decisions speak in terms of protecting the wife, in modern society the principles of law are applicable to either spouse.

Our decisions under the statute similarly show no reluctance to supervise separation agreements. A leading decision, *Wilhoit v. Wilhoit,* Ky., 506 S.W.2d 511 (1974), defined the term "unconscionable" as used in KRS 403.250, the modification statute, to mean "manifestly unfair or inequitable." The oft-cited Court of Appeals decision in *Peterson v. Peterson,* Ky.App., 583 S.W.2d 707 (1979), contains a broad analysis of the statute here under review and of separation agreements in general. It held that a bad bargain and unconscionability were not synonymous.

While recognizing that "a rather harsh settlement" had been reached, the court gave great deference to the view of the trial court. "It would appear that in cases of this nature the trial court is in the best position to evaluate the circumstances surrounding the agreement." *Id.* at 712.

▮ Another important case is *Rupley v. Rupley,* Ky.App., 776 S.W.2d 849 (1989), which held that fraud, duress, coercion and the like are not necessary prerequisites to a finding of unconscionability under KRS 403.180. A case which has some applicability here is *McGowan v. McGowan,* Ky.App., 663 S.W.2d 219 (1983), in which the court articulated the grounds for invalidating separation agreements. Quite accurately, the court said, "a separation agreement is unconscionable and must be set aside if the court determines that it is manifestly unfair and unreasonable." *Id.* at 222. Fraud, undue influence, and overreaching were identified as entirely separate grounds. After discussing the facts, which included threats, the inducement of guilt, the emotional state of the complaining spouse, and the economic provision (one-third of income from the practice of dentistry), the court said "In light of the evidence, we cannot say that the court erred in setting the substantive portions of the separation agreement aside." *Id.*

As the foregoing and other cases show, fraud, deceit, mental instability or the like, are not required to obtain invalidation of a separation agreement. What is required is a showing of fundamental unfairness as determined "after considering the economic circumstances of the parties and any other relevant evidence...." KRS 403.180(2). Undoubtedly, the trial court is in the best position to make such an analysis and the cases reflect broad deference to the trial court in this regard.

In the case at bar, the single most important fact is that while appellee had a pre-tax income of about $200,000 annually, by the agreement he obligated himself to pay in excess of $160,000 annually for the support of his children and former wife. While the parties have debated the effect of taxes, in-

cluding the deductibility of appellee's maintenance payment, we will not further scrutinize these facts. After hearing the evidence, the trial court believed the agreement to be unconscionable. The Court of Appeals affirmed and we do likewise.

We have considered appellant's argument that the trial court erred in disapproving the agreement in its entirety. We recognize that this is an equitable argument which says in substance that the agreement of the parties should be effectuated to the greatest possible extent after exclusion of the unconscionable portions. However, the provisions of KRS 403.180(3) defeat any such contention. Quite plainly, upon a finding of unconscionability, the trial court may fully decide the case as if there had been no agreement. *Edwardson v. Edwardson*, Ky., 798 S.W.2d 941 (1990), differs in that it dealt with enforcement of an ante-nuptial agreement based on common law principles. Moreover, the circumstances attending the formation of antenuptial agreements and separation agreements differ too greatly to permit the principles applicable to the former to substantially influence the latter.

As in any case, the funds available here for the support of the parties and their children were not unlimited. From the pool of available resources, the trial court sought to achieve the greatest degree of equity in distribution of those funds. If we should require the trial court to enforce a specific provision of the separation agreement calling for the expenditure of funds for life insurance, post-secondary education, or the like, an adjustment in maintenance, child support or some other payment would necessarily follow. We discern no flaw in the trial court's formulation which is sufficient to require appellate correction.

For the these reasons, we affirm the Court of Appeals.

STEPHENS, C.J., and GRAVES, JOHNSTONE and LAMBERT, JJ., concur.

COOPER, J., concurs in result only and files a separate concurring opinion in which STEPHENS, C.J., and JOHNSTONE, J., join.

STUMBO, J., dissents by separate opinion in which WINTERSHEIMER, J., joins.

COOPER, Justice, concurring.

I concur in the result reached by the majority. However, I believe that a conclusion that a separation agreement is unconscionable requires more than a finding that the property division is one-sided.

The law places a "definite and substantial burden" of proof upon a party seeking modification of a separation agreement. *Peterson v. Peterson*, Ky.App., 583 S.W.2d 707, 711 (1979). In *Peterson*, the Court of Appeals held that an agreement clearly could be set aside on the basis of fraud, undue influence, or overreaching, but not solely on the basis that it constitutes a bad bargain. *Id.* at 712. In *Burke v. Sexton*, Ky.App., 814 S.W.2d 290 (1991), another Court of Appeals panel held that proof that an agreement is "lopsided" and clearly detrimental to one party creates a presumption that the agreement is unconscionable. I agree; but that presumption is not irrebuttable.

Whether a property settlement agreement is "manifestly unfair or inequitable" cannot be determined by a mere comparison of the assets awarded to the respective parties. It is also appropriate to inquire into the reason why the moving party entered into such an agreement in the first place. Parties to a divorce action often have perfectly valid motives for agreeing to what appear to be bad bargains. Experience teaches that a person so inclined will give up virtually all of his or her earthly possessions in order to obtain a quick divorce and be free to marry again. Another will do so to avoid a custody battle, the outcome of which might otherwise be doubtful. And yet another will do so for cathartic reasons, *e.g.*, to atone for his or her own marital misconduct. If so, what appears on the surface to be a bad bargain may not be so bad after all. In such a case, it is not manifestly unfair or inequitable to let a party lie in the bed he or she has freely made.

Consideration to support an agreement will not be deemed to be inadequate merely because the agreement operates to the disadvantage of one of the parties. Mutual promises themselves form a valuable con-

sideration for an agreement where there is benefit to the promisor or detriment to the promisee.

*Bishir v. Bishir,* Ky., 698 S.W.2d 823, 826 (1985). (Of course, if the inducement rose to the level of blackmail, such would constitute overreaching and even *Peterson, supra,* would mandate finding the agreement unconscionable.)

Thus, a party seeking to set aside a separation agreement can satisfy his or her burden of proof by evidence of fraud, undue influence or overreaching. Absent such evidence, the movant must prove that the agreement is so one-sided as to be not just a bad bargain, but so clearly detrimental to the movant's interest as to create a *prima facie* case, *i.e.,* a rebuttable presumption, that the agreement is manifestly unfair or inequitable. If the movant's evidence is insufficient to satisfy this burden, the motion to set aside the agreement must be denied. But if the movant's evidence proves *prima facie* that the agreement is manifestly unfair or inequitable, the burden of going forward shifts to the proponent of the agreement to produce evidence to explain why it would not be manifestly unfair or inequitable to enforce it. KRE 301.

The trial judge is in the best position to determine whether, under the totality of the circumstances, a particular settlement agreement is manifestly unfair or inequitable. The judge's decision in that regard can be tested on appeal by application of the "clearly erroneous" standard for review. CR 52.01. In *Peterson, supra,* the trial judge's conclusion that the agreement was not unconscionable was held not clearly erroneous. Similarly, in *Burke v. Sexton, supra,* the trial judge's conclusion that the agreement was unconscionable appears to have been held not clearly erroneous.

In the case *sub judice,* the trial judge found the agreement to be unconscionable. There is substantial evidence in the record to support a finding that the agreement is so clearly against Appellee's interest as to create a presumption of unconscionableness. The evidence also supports a finding that Appellant failed to adequately explain why it would not be manifestly unfair or inequitable

to enforce it. Thus, the trial judge's conclusion that the agreement is unconscionable is not clearly erroneous. For these reasons, I concur in the result reached by the majority in this case.

STEPHENS, C.J., and JOHNSTONE, J., join this concurring opinion.

STUMBO, Justice, dissenting.

Respectfully, I dissent. Both this Court and the Court of Appeals have repeatedly stated that simply because a party has entered into an agreement that subsequently turns out to be a bad bargain, that does not constitute a reason to set aside a freely entered into property agreement. *See, e.g., Bishir v. Bishir,* Ky., 698 S.W.2d 823 (1985); *Burke v. Sexton,* Ky.App., 814 S.W.2d 290 (1991); *Peterson v. Peterson,* Ky.App., 583 S.W.2d 707 (1979); *Whalen v. Whalen,* Ky. App., 581 S.W.2d 578 (1979).

This case involved the striking of a bad bargain entered into by a highly educated professional spouse, who was unrepresented by counsel. He does not contend that he was unaware of the contents of the agreement or that they were in any way misrepresented by Appellant's counsel at the time of signing. This is precisely the fact situation addressed by the cases cited above and to rule otherwise is to overrule those cases in fact, if not by name. I would reverse the Court of Appeals and the trial court and reinstate the terms of the agreement.

WINTERSHEIMER, J., joins.