**George W. PETERSON, Appellant,**

v.

**Kum Ok PETERSON, Appellee.**

Court of Appeals of Kentucky.

June 22, 1979.

G. William Bailey, Jr., Pate, Richardson & Bailey, Elizabethtown, for appellant.

Nicholas L. Pearl, Radcliff, for appellee.

Before COOPER, GANT and HOWERTON, JJ.

COOPER, Judge.

This is an appeal from a judgment in the Hardin Circuit Court dissolving the marriage of the parties, wherein the trial court affirmed the separation agreement as a part of the final judgment in the dissolution of the marriage.

This appeal presents two significant questions in the area of domestic relations: 1) the effects of reconciliation on a settlement agreement; and 2) the correct standard in reviewing a trial court's ruling on the conscionability of such agreements. Both issues are questions of first impression in the area of domestic relations law as it is affected by the 1972 revision of our divorce statutes. Although there are many Kentucky cases addressing the first issue, its significance herein arises from the fact that this is the first case to present the question under no-fault divorce. The second issue has arisen recently in a number of cases.

George Peterson, petitioner below and appellant herein, and Kum Ok Peterson were married in Seoul, Korea, on July 12, 1968. Two children were born of this marriage; a daughter now ten years of age; and a son, now eight.

George and Kum moved to Kentucky in 1975, and at the date of dissolution resided in the city of Radcliff. George is a sergeant in the United States Army, stationed at Ft. Knox. Kum works in Ft. Knox at the Officers' Open Mess.

The parties first separated on September 3, 1977. Three days thereafter, George filed a petition in the Hardin Circuit Court seeking a dissolution of marriage. The par-

ties reconciled, however, so the summons issued with the petition was never served on Kum.

According to George, the parties next separated near the end of March, 1978. This separation led to the execution of a settlement agreement on April 6. The same document apparently was re-executed on April 7. The agreement was drafted by Kum's attorney, and George signed the agreement without consulting his attorney. The terms of the agreement distributed the parties' property, gave custody of the children to Kum, and obligated George to pay $600.00 per month as child support and spousal maintenance. George also agreed to pay Kum's car payment of $100.00 per month.

George testified that another attempt at reconciliation was made when he moved back in with Kum on August 21, 1978. However, this reunion was short-lived as George further testified that on September 14 he was ordered by his company commander to move out of the house and back to the barracks.

The record reflects that the summons was served on Kum on July 25, 1978. Kum's response was filed August 8, 1978. Filed therewith was a motion for incorporation of the settlement agreement. The agreement was filed September 5, 1978. On September 6, 1978, George moved the trial court for an order awarding him temporary custody of the children. George also moved the court for temporary use and possession of the marital home and an automobile during the pendency of the action.

On September 15, 1978, Kum filed a motion seeking to have George adjudged in contempt of court for violation of a restraining order. In the affidavit supporting that motion, Kum alleged that George had attacked her, threatened her, and destroyed most of her clothing.

Oral arguments were heard by the trial court on September 28, 1978. George was the only witness to testify at that proceeding. The trial court entered its order on October 5, dissolving the parties' marriage and incorporating the agreement into the

decree by reference. George now appeals from that incorporation, asserting that the parties' reconciliation in August, 1978, rendered the settlement agreement null and void.

## I.

A review of Kentucky case law on the subject discloses that the effect of reconciliation on settlement agreements depends upon whether the provisions of the agreement are executed or merely executory. With fully executed property settlements, reconciliation does not abrogate the agreement unless the parties intended it to do so. *Gordon v. Gordon*, Ky., 335 S.W.2d 561 (1960). To ascertain the intention of the parties, the Court will look at the construction the parties themselves have placed on the agreement. *King v. King*, Ky., 274 S.W.2d 656 (1954).

Where the provisions of a settlement agreement are executory, however, "[t]he rule followed in this jurisdiction is that a reconciliation of the spouses and [a] resumption of cohabitation by the parties to the separation agreement nullifies the agreement . . . ." *Goodaker v. Littell*, Ky., 314 S.W.2d 539, 540 (1958); *Ray v. Ray's Ex'x*, 249 Ky. 347, 60 S.W.2d 935 (1933); *Hoskins v. Hoskins*, 201 Ky. 208, 256 S.W. 1 (1923). Even with executory agreements, however, reconciliation will not abrogate the agreement if "the court can determine from other evidence the real intention of the parties." *Goodaker, supra* at 540. Such contrary intentions may be ascertained by looking to the language of the agreement itself, *Hartley v. Hartley*, 305 Ky. 350, 203 S.W.2d 770 (1947), or from the acts of the parties subsequent to reconciliation, *Hall v. Hall*, Ky., 328 S.W.2d 541 (1959).

While there are no Kentucky cases specifically addressing the point, it seems clear that a settlement agreement is not annulled by a brief cohabitation or occasional sexual relations between the parties. Annot., 35 A.L.R.2d 707 (1954). However, it is equally clear that the duration of a reconciliation is unimportant. For exam-

ple, it has been held that a one-year reconciliation annulled an agreement, *Gardner v. Gardner*, Ky., 280 S.W.2d 198 (1955), as well as a fifteen-year reconciliation, *Hoskins, supra*. The important factor in determining whether there has been, in fact, a reconciliation is the parties' intentions. Thus, it is said that:

> A reconciliation and resumption of relations, in order to affect a postmarital contract, ordinarily contemplate the establishment of a home in which the parties live in the normal relationship of husband and wife.
>
> 24 Am.Jur.2d *Divorce and Separation* § 916.

Further, *both* parties must have intended to become reconciled. The agreement is not annulled where only one of the parties desires reconciliation. *Id.*; Annot., 35 A.L.R.2d 707 (1954).

Once it is found that the parties' attempted reconciliation nullified the agreement, the provisions are void for all purposes. The agreement is not revived by a subsequent separation. 24 Am.Jur.2d *Divorce and Separation* § 913.

Research in this area discloses no Kentucky cases addressing the issue since the 1972 revision of our divorce statutes. However, a review of those statutes discloses no reason why an agreement should not be annulled after a true reconciliation of the parties. In fact, by promoting the use of settlement agreements to resolve marital disputes, KRS 403.110, the doctrine may have even more validity under the no-fault divorce statutes.

Applying the above principles to the case at bar leads to the conclusion that the decision below on this issue was not clearly erroneous. While it is true that Kum did not testify, George's testimony is not so compelling as to require the trial court to find that the agreement was annulled. At the most, George's testimony indicates that the parties had twice engaged in sexual relations during their separation and that George had entertained some ideas of reconciliation. There was absolutely no evidence that Kum ever desired reconciliation, except for George's bare assertion that: "As I understood it, we were going to see how things worked out and try to get back to normal relations." George admitted, in fact, that Kum had rebuffed all his previous attempts at reconciliation. An examination of the dates of the various pleadings in this case further discloses that a reconciliation was at most merely contemplated by the parties. Viewing the case as a whole, the trial court could reasonably have decided that this was one of those cases,

> involving a trial resumption of cohabitation [in which] it may be said that the person or persons who insist that the cohabitation shall be a trial do not have a present intention to resume cohabitation on a permanent basis, but merely intend to make up their minds at a later date, and so there is no mutual intention to establish a permanent home and no permanent composition of differences. The "trial" is in effect a negotiation for a future reconciliation, and is not a complete agreement. 35 A.L.R.2d 707, 753 (1954).

In addition, it appears that the agreement itself may prevent annullment. An example of such a holding may be found in the case of *Hartley v. Hartley, supra*. In that case, the agreement stated that it was the parties' intention for the agreement provision to remain in effect whether a divorce was granted or not, and to stand "in any action." In reaching the result that the agreement was not annulled by a reconciliation the Court wrote:

> It is clear to us that this provision of the contract was inserted to give permanence to the agreement, and that it clearly manifests that it was the intention of the parties at the time that no subsequent conduct should have any effect upon the division of the property. *Id.* at p. 773.

In the instant case, the preamble to the separation agreement could be construed as having the same effect. The preamble of George and Kum's agreement states as follows:

WITNESSETH:

That whereas the marriage between these parties is experiencing difficulty and the parties are not certain about the prospects of reconciliation; and

WHEREAS, the parties are living apart and have lived apart since the date of the signing of this separation agreement,

WHEREAS, the parties are desirous of effecting and promoting an amicable settlement of all disputes between these parties, and

WHEREAS, it is now determined that it is impossible for the parties to live happily in a marital state at this time, and the parties mutually agreed to enter into this written separation agreement, and

WHEREAS, the parties desire to enter into an agreement with respect to their property rights, and other rights, including the wife's right to support and maintenance both temporarily and in the event that either party obtains a decree against the other for divorce and including the obligations for the husband to pay child support both temporarily and in the event of a subsequent divorce;

It thus appears that regardless of whether the facts in this case are viewed as one in which only one party had the intent to reconcile or as the case where the parties intended reconciliation not to annul their agreement, the decision of the trial court cannot be said to be clearly erroneous. CR 52.01.

## II.

The second issue presented by this appeal deals with the KRS 403.180 requirement that a trial court determine whether the settlement agreement is unconscionable prior to approval of that agreement. This issue appears to be arising more frequently, indicating the need for a judicial explanation of the appropriate standard.

The clearest example of the issue is presented by the so-called "uncontested" divorce. In such cases, the trial court is presented with an agreement which, on its face at least, appears to be reasonable. Since the dissolution proceeding is "uncontested," the parties offer no proof of economic circumstances. Although the trial court could request such proof on its own motion, KRS 403.180 does not require it to do so. Such a request is apparently rare, perhaps because the court views the case as agreed. The trial court then approves the agreement as consciable without really knowing the underlying facts. Sometime thereafter, the silent party appeals to this Court for relief contending that the agreement is unconscionable and that the trial court erred in failing to so rule.

A more difficult case is presented by the facts herein because George did contest the conscionability of the document at the trial court level. George's arguments go both to the property aspects and the maintenance and child support provisions of the agreement. Looking at merely the support provisions, it is clear that had those amounts been ordered by a court, they would have been reversed as an abuse of discretion. It is equally clear, however, that George freely agreed to pay approximately two-thirds ($700.00) of his salary ($934.00 net per month) as support. There is no evidence of fraud or overreaching in the execution of this agreement.

Because KRS 403.180 contemplates the challenge of unconscionability by a party to the agreement, the question is what factors are necessary to support such an argument. Several policy considerations should first be evaluated in making such a determination.

First, while our no-fault divorce act clearly promotes the settlement of disputes by agreement, KRS 403.110, 403.180, it is also clear that the law favors stability in such settlements. Thus, the provisions for modification are fairly stringent, *see* KRS 403.250, and a "definite and substantial burden" is placed upon the party seeking modification. *McKenzie v. McKenzie,* Ky., 502 S.W.2d 657 (1973). That being the case, it would follow that the party challenging the agreement as unconscionable should also have the burden of proof.

The modification cases define unconscionability as "manifestly unfair and inequitable." *Wilhoit v. Wilhoit,* Ky., 506 S.W.2d 511 (1974). Such a definition should

also apply to a court's initial ruling on an agreement under KRS 403.180. Thus, an agreement could clearly be set aside on the basis of fraud, undue influence, or over-reaching. On the other hand, an agreement could not be held unconscionable solely on the basis that it is a bad bargain. The difficult cases, of course, are those that fall between these two extremes. The case at bar is a perfect example.

In this case, George has agreed to a rath-er harsh settlement. As in most of these cases, the reason for a party's initial agree-ment to such a harsh settlement is some-what difficult to understand. In this case, George stated the reason for his execution of the agreement was "so she could not possibly come back at me with desertion, and more or less to protect myself. And also to just make it legal on paper." There was no allegation that George did not un-derstand the economic consequences of his acts when the agreement was executed. It appears that his argument is based only on his alleged inability to make the $700.00 per month payments. It is equally clear, how-ever, that George has been making these payments for a period of several months. Although George did testify that he has lost a second job, there was no evidence as to the amount of wages paid by that job. However, as the trial court stated at the hearing:

> Well, of course, the agreement is going to be pretty hard to live with, I think. But these people are of age. They have been married for a considerable period of time. There is no testimony of any over-reaching. He says he don't [sic] think its fair. But his testimony is that he did read it, was typed up, he did sign it, it was discussed. And of course I notice in the allowance here that part of that is for her too. And, of course, if he wanted to give her everything he made, and the agreement is voluntary, I don't think the court has any control over it. I see no showing, whatever, of misrepresentation, overreaching, or anything else.

It would appear that in cases of this nature the trial court is in the best position to evaluate the circumstances surrounding such an agreement. In some cases, the trauma of divorce may have prevented a party from fully appreciating the economic circumstances of the agreement. However, in other cases, it may appear that the spouse now challenging the agreement ini-tially sought its execution to expedite the dissolution proceedings. Having achieved the dissolution, the spouse now seeks to set aside the agreement.

 Given the nature of our no-fault divorce statute, coupled with the desirabili-ty of imparting some degree of finality to settlement agreements, a party challenging an agreement as unconscionable should have a relatively high burden of proof. Since the trial court is in the best position to judge the circumstances surrounding the agreement, its finding on the issue of con-scionability should not be set aside on ap-peal unless there is some evidence of fraud, undue influence, overreaching, or evidence of a change of circumstances since the exe-cution of the original agreement. Applying that standard to the instant case leads to the conclusion that the decision below is not clearly erroneous. The only factor which may have afforded George relief is the loss of his second job. However, George's com-plete failure to prove the impact of that loss, or the circumstances surrounding it, make the trial court's decision supportable, and thus not clearly erroneous.

The judgment is affirmed.

All concur.