Donald C. CAMERON, Appellant,

v.

S. Lynea CAMERON, Appellee.

No. 2007–SC–000105–DG.

Supreme Court of Kentucky.

Sept. 18, 2008.

As Modified Nov. 12, 2008.

Patrick· E. Price, Suite, McCartney & Price, LLC, Flemingsburg, KY, Counsel for Appellant.

Raymond S. Bogucki, Stacey S. Sanning, Law Office of Raymond S. Bogucki, PSC, Maysville, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

We unanimously affirm the decisions of the Court of Appeals and the trial court. In doing so, we hold that the trial court was not clearly erroneous when it held that the parties did not reconcile and abrogate their separation agreement. Neither is the agreement unconscionable.

The parties in this case were married twice, first in 1988. There was one child born of this marriage on April 21, 1989. The parties lived on a large farm of approximately 1,200 acres which was managed by Donald, but owned by his father. It appears that all of the parties' expenses were paid for by Donald's father as part compensation for Donald managing the farm.

In 1998, Donald filed for divorce in the Bourbon Circuit Court. The parties were divorced, but there was never a property settlement following the divorce. Donald remarried and was subsequently divorced from that wife, with whom he had a son.

On January 4, 2002, the parties reconciled and remarried and lived together until October 10, 2002. In between their divorce and remarriage, Donald's father gifted him several farms located in Nicholas County, Kentucky, totaling approximately 1,400 acres.

After the January 2002 remarriage, the parties resided together on the real estate gifted to Donald by his father. Unfortunately, the parties only lived together for less than a year when, in October of 2002, Donald filed for a second divorce, this time in the Nicholas Circuit Court.

Shortly after Donald filed for dissolution, Lynea moved in with her mother in Mason County, Kentucky. In late November, Donald, who was represented by an attorney, contacted Lynea, who was not represented by an attorney, about the

prospects of once again reconciling. It appears from the record that both parties were serious about the reconciliation attempt, but that Lynea insisted upon the parties attending marriage counseling. It also appears that Donald wanted to reassure his wife that if their reconciliation attempt failed, she would be taken care of with a sufficient amount of property. Therefore, on December 20, 2002, both parties signed a document entitled, "Separation Agreement," which is the subject of this action.

The agreement drawn by Donald's lawyer is a short and concise contract, but contains the significant provision which is at the center of this controversy. It is also significant in what it does not contain.

Paragraph three, which deals with property issues, states specifically that the parties would equally divide all property, to include "whether said property be classified as marital or non-marital property." It has not been refuted that this clause was included specifically for the purpose of including the property that had been gifted to Donald by his father. Significantly missing from the agreement are any provisions for either maintenance or child support.

The steps taken toward reconciliation are particularly germane to the issue before us. Lynea did not move back into the Nicholas County property with her husband. None of her personal possessions were moved back into that home. She and Donald did spend quite a bit of time together visiting on weekends. They even took two separate trips to Mexico, the latter being in February or March of 2003 when their daughter and another person went with them. During this latter visit, at least, the parties slept in separate rooms. The evidence reveals that during this attempted reconciliation the parties spent frequent weekends together. Their activities during this period of time are consistent with a genuine attempt to reconcile, as well as constructive, joint parenting of their fourteen-year-old daughter.

Finally, in August of 2003, after giving up on attempts at reconciliation, Lynea filed her own divorce action in Mason County where she was residing at the time. Lynea testified that she filed in Mason County, thinking that the Nicholas County case would be transferred there. However, the Mason County action was dismissed when it was discovered that the Nicholas County action was still active and had not been dismissed. Donald then moved that the separation agreement be set aside because they had reconciled subsequent to the making of it, as well as claiming that it was unconscionable.

The trial court held in its order and judgment entered on July 19, 2005, that the separation agreement was enforceable as not being abrogated by reconciliation nor as being unconscionable. This finding was supplemented and reaffirmed in a supplemental order of August 26, 2005, which finally divorced the parties.

■ The guiding question which the Court of Appeals answered, and which we must address, is whether the trial court's findings in this action are clearly erroneous. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.2003). Put another way, we must determine whether the findings of the trial court were supported by substantial evidence. *Commonwealth v. Deloney*, 20 S.W.3d 471, 474 (Ky.2000). In doing this, we must remember that the trial court is in the best position to judge credibility and to make a decision, not necessarily with which we agree, but which is supported by substantial evidence. *City of Monticello v. Rankin*, 521 S.W.2d 79, 80 (Ky.1975). *See also Burke v. Burke*, 801 S.W.2d 691, 694 (Ky.App.1990); *Kentucky State Racing*

*Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky.1972).

The trial court in this case found that there was no reconciliation between the parties. Had there been so, the effect of it depends on whether the agreement was executed or merely executory. *Peterson v. Peterson*, 583 S.W.2d 707 (Ky.App. 1979). If the agreement had been properly executed, reconciliation does not abrogate the agreement unless the parties intended it to do so. *Id.* at 709, *citing Gordon v. Gordon*, 335 S.W.2d 561 (Ky. 1960). The law is further clear that if there is an agreement yet to be executed, as we have here, reconciliation of the spouses and a resumption of cohabitation of the parties nullifies the agreement. *Id., citing Goodaker v. Littell*, 314 S.W.2d 539, 540 (Ky.1958).

However, the trial court addressed the question not as to whether the parties intended to reconcile, but whether reconciliation was accomplished. The trial court held that it was not, and we do not believe that it abused its discretion in so finding.

Absent a dismissal of a pending divorce or an express rescission of the agreement, we do not envision any bright line rule for the trial court in making this determination. With a societal interest in the preservation of marriage, we are careful to give the trial court great deference in judging when reconciliation is complete. We do so in order that the law does not put a chilling effect upon reconciliation attempts.

Absent an outright rescission of the agreement, whether reconciliation has actually occurred can be a most difficult call to make. Of course, the intentions of the parties are certainly an important factor for the trial court to consider.[1] Obviously, if either party does not intend to reconcile, then reconciliation cannot occur.

We could not possibly enumerate all of the factors which might come into play for a trial court to consider in determining whether reconciliation has occurred. We mention only a few: (1) whether the parties have resumed residing with each other; (2) the nature in which they hold their personal property, including bank accounts; (3) their failure to carry out other executory provisions of the contract; (4) activities of the parties in which normally only married couples participate; (5) whether the parties attended marriage counseling (here, both parties attended, but Lynea stopped going); and (6) other factors of which this Court is not now mindful. A guiding light might be that reconciliation occurs where, from all appearances and for a substantial period of time, it seems purely an oversight that the agreement has not been rescinded or the divorce action dismissed. As mentioned, this process is a very dense and thorny undergrowth of fact-finding through which the trial court must hack out on its way to a conclusion.

Here, the trial court was confronted with the fact that the parties had already been divorced once. Lynea continued to reside with her mother in Mason County and kept her personal property separate from that of Donald. And while the parties had spent some time together, including two short vacation trips to Mexico and several weekends, the trial court found that they had never resumed cohabitation after signing the separation agreement.[2]

---

**1.** *See Peterson*, 583 S.W.2d at 709; *Goodaker*, 314 S.W.2d at 540.

**2.** We note that in the *Peterson* case, even cohabitation for a short period of time does not constitute reconciliation. In that case, the couple moved back in with each other some four months after the agreement was signed and lived together for almost a month.

Finally, Donald testified that the marriage had been reconciled and Lynea testified that it had not. Considering all of the circumstances of this case, we do not believe that the trial court was clearly erroneous in accepting the testimony of Lynea.

 The second question raised in this appeal seems much easier to deal with. That is, the allegation by Donald that the agreement entered into was unconscionable. KRS 403.180(2) states in relevant part, "[T]he terms of the separation agreement ... are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence ... that the separation agreement is unconscionable." In finding that the agreement between the parties was not unconscionable, the trial court was obligated to follow the case law of this state and enforce the contract unless it was found to be "manifestly unfair or inequitable." *Burke v. Sexton,* 814 S.W.2d 290, 292 (Ky.App.1991).

Also, in this instance the burden of proof in challenging the agreement was upon Donald. *Peterson,* 583 S.W.2d at 712. The separation agreement was prepared by Donald's lawyer and signed by both parties. Lynea signed the agreement without benefit of counsel. Also, the trial court found that Donald was a college graduate and that the agreement was not the result of fraud, undue influence, or overreaching. All of this was supported by substantial evidence. Neither does this Court find that the trial court was erroneous in finding that the separation agreement was not manifestly unfair or inequitable.

It is true that Donald divested himself of half the property which was non-marital. While the second marriage between the parties was of short duration, neither divorce provided for maintenance or child support. This was a cumulative ten year marriage. In light of this, it can hardly be said that the agreement was lopsided. We do not think that the trial court was clearly erroneous in its finding that Donald had failed to meet his burden of proof necessary to show that the separation agreement was unconscionable.

All sitting. All concur.