RENDERED: JANUARY 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1507-MR

JULIE WERNER (FKA JULIE CROWE)                          APPELLANT

v.
APPEAL FROM DAVIESS FAMILY COURT
HONORABLE JOHN M. MCCARTY, JUDGE
ACTION NO. 17-CI-00039

MICHAEL JAMES CROWE                                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, DIXON, AND K. THOMPSON,[1] JUDGES.

THOMPSON, K., JUDGE: Julie Werner (FKA Julie Crowe) appeals two orders of

the Daviess Family Court. The first order, entered March 26, 2020, denied her

Kentucky Rules of Civil Procedure (CR) 60.02 motion to set aside the family

court's decree regarding Werner's division of marital property with her now ex-

---

[1] Judge Kelly Thompson authored this Opinion before his tenure with the Kentucky Court of
Appeals expired on December 31, 2022. Release of this Opinion was delayed by administrative
handling.

husband, appellee Michael James Crowe. The second order, entered October 23, 2020, denied Werner's additional motion for a declaration of rights regarding two Merrill Lynch accounts which were not divided in the decree. We affirm because it was not unconscionable for the family court to rely on the parties' waiver of their rights in agreeing to the property settlement without more judicial oversight, Werner has not alleged fraud but rather appears to "second-guess" the wisdom of entering into a property settlement agreement and waiving her additional rights to judicial oversight, and the parties consented to Merrill Lynch accounts being awarded to Crowe.

On January 11, 2017, Werner filed a verified petition in family court to dissolve her marriage with Crowe. Crowe answered shortly afterward, and nothing more was filed over the course of roughly the next sixteen months. At all relevant times, both parties were represented by counsel.

On July 11, 2018, Werner and Crowe then filed of record: (1) sworn answers to one another's discovery interrogatories; (2) a verified property settlement agreement (PSA); (3) a joint motion for the entry of a decree dissolving their marriage and incorporating their PSA; and (4) a joint, verified acknowledgement and motion for waiver indicating that they "waived exchanging signed and notarized Verified Disclosure Statements," "the filing of verified disclosures with the record," and "the right to a final hearing and further

-2-

proceedings." Later that month, the family court granted their motions; it also entered a dissolution decree incorporating their PSA, finding it to be "not unconscionable."

Roughly a year later, Werner filed a CR 60.02 motion arguing the PSA was unconscionable and that the family court erred in failing to so rule. She sought to have the PSA and the decree incorporating it either set aside or modified.

The family court denied Werner's motion. Werner now appeals, arguing: (1) the family court should have set aside the decree pursuant to CR 60.02 because (a) the family court failed to follow its statutory mandate to determine the conscionability of the PSA; and (b) Crowe's out of court conduct amounted to "fraud affecting the proceedings"; or, alternatively, (2) that the family court had no jurisdiction to effect a post-decree modification of her property division with Crowe that encompassed two Merrill Lynch accounts that were not addressed in the PSA.

The reopening of a judgment under Kentucky law is governed by CR 60.02. Relief under CR 60.02 is exceptional and is to be granted cautiously and available "only under the most unusual and compelling circumstances." *Age v. Age*, 340 S.W.3d 88, 94 (Ky. App. 2011). The decision to grant or to deny a CR 60.02 motion lies within the sound discretion of the family court and we will not disturb its decision absent an abuse of that discretion. *Age*, 340 S.W.3d at 94.

-3-

Only a decision that is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles" constitutes an abuse of discretion. *Id*. (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

In relevant part, CR 60.02 sets forth six grounds upon which relief from a final judgment may be granted. Werner does not connect what she alleges were procedural errors with any specific ground identified in CR 60.02. In her appellate brief, she summarizes her argument as follows:

> The Trial Court failed to follow its statutory mandate under [Kentucky Revised Statutes] KRS 403.180 to determine the conscionability of the parties' PSA as it was legally and factually impossible to do so given the failure of the parties to neither exchange and file mandatory preliminary verified disclosure statements nor final verified disclosure statements.

However, Werner's arguments that the family court "failed to follow its statutory mandate" and did something "legally and factually impossible" involved facts that should have been known to her prior to when she asked the family court to approve her PSA with Crowe and enter its decree. Accordingly, these are issues she could have raised in a direct appeal; and it is well-established that CR 60.02 relief is only available for issues that could *not* be raised in a direct appeal. *McQueen v. Commonwealth*, 948 S.W.2d 415 (Ky. 1997). Indeed, Werner devotes much of her brief to the premise that the family court's assessment of "conscionability" was indicative of "clear error," which is not a ground for relief

-4-

under CR 60.02, but rather a standard that would have applied to direct appellate review of the family court's decree. *See* CR 52.01.

To the extent Werner's argument in this vein could involve any of the CR 60.02 grounds, it at most appears to implicate subsection (e), which permits a trial court to vacate a "void" judgment. However, Werner cites no authority – and we have found none – favoring the proposition that insufficiency of evidence supporting an unconscionability determination or the failure to file or exchange verified disclosure statements can render a property division decree *void*.

Kentucky encourages the amicable resolution of a divorce action by settlement agreement. KRS 403.250(1) provides that such agreements incorporated into a decree of dissolution of marriage "may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state."

Pursuant to KRS 403.180, a family court must determine whether a property settlement agreement "is unconscionable prior to approval of that agreement." *Peterson v. Peterson*, 583 S.W.2d 707, 711 (Ky. App. 1979). However, making such a determination in the context of an uncontested divorce proceeding can lead to an issue:

> In such cases, the trial court is presented with an agreement which, on its face at least, appears to be reasonable. Since the dissolution proceeding is "uncontested," the parties offer no proof of economic

circumstances. Although the trial court could request such proof on its own motion, KRS 403.180 does not require it to do so. Such a request is apparently rare, perhaps because the court views the case as agreed. The trial court then approves the agreement as conscionable without really knowing the underlying facts. Sometime thereafter, the silent party appeals to this Court for relief contending that the agreement is unconscionable and that the trial court erred in failing to so rule.

*Id.*

When the family court assessed the conscionability of the parties' PSA, nothing in KRS 403.180 prohibited it from simply relying upon the parties' sworn interrogatory answers and statements set forth in the PSA, all of which supported their joint assertion that their division of property was not unconscionable. The dissolution proceeding was uncontested, and the parties offered all required necessary proof regarding their respective economic circumstances.

Likewise, regarding Werner's point about "the failure of the parties to neither exchange and file mandatory preliminary verified disclosure statements nor final verified disclosure statements," Werner explicitly *waived* exchanging verified disclosure statements with Crowe, and the family court was authorized to grant her motion to further waive the filing of verified disclosures with the record. *See* Kentucky Family Court Rules of Procedure and Practice (FCRPP) 2(1)(e) (permitting the family court to enter an order permitting the parties to not file a

-6-

Final Verified Disclosure Statement); *see also* FCRPP 2(3) (providing that

Preliminary Mandatory Disclosures "shall not be filed in the record unless ordered

by the court or required by local rule.").[2]  In short, Werner presents nothing in this

respect indicating the family court committed error that would subject its final

decree to collateral attack through a CR 60.02 motion.

Werner's second argument relative to CR 60.02 is that the decree

regarding her division of property with Crowe should be set aside due to Crowe's

out-of-court conduct, which she contends amounted to "fraud affecting the

proceedings" – a ground CR 60.02(d) encompasses.  Regarding this aspect of the

CR 60.02 motion she filed below, Werner asserted that several months after the

family court entered its decree incorporating her PSA with Crowe, she came to

_____

[2] In her brief, Werner notes that the local rules of at least one judicial circuit in Kentucky specifically require parties to file verified disclosure statements with the record.  She emphasizes that the 14th Family Court Rules of Procedure (14th FCR) 701 of the *Bourbon*, *Scott*, and *Woodford* Family Court provides, in relevant part, that:

> A Preliminary Verified Disclosure Statement, Form AOC-238, shall never be waived.  If the parties enter into a settlement agreement, each shall attach to the agreement a copy of a completed Preliminary Verified Disclosure Statement, Form AOC-238 for consideration by the Court assessing the conscionability of the terms of the agreement.

Her point is irrelevant.  This action was resolved in *Daviess* Family Court, and the only local rule relating to FCRPP 2, Rules of the Daviess Circuit Court (RDCC) 506, provides in relevant part:

> If the parties reach an agreement on all issues, a decree of dissolution may be obtained without a hearing by filing a motion or agreed order to submit for decree of dissolution of marriage. Counsel shall comply with FCRPP 2 and 3 and file the documents with the Clerk for entry[.]

It does not require the filing of any verified disclosure statement before an agreed decree of dissolution may be obtained.

believe Crowe had concealed or undervalued marital assets. She argued that *if* Crowe had in fact done so, then he had fraudulently induced her to enter the PSA. The word "if" is emphasized for a reason: because the parties conducted no formal discovery prior to settling their division of marital property, Werner remained uncertain whether Crowe had undervalued or concealed any assets. Instead, as Werner set forth in her CR 60.02 motion, she had "grave suspicions." In the relevant part of her motion, she argued:

> The parties' PSA appears to be unconscionable, but this Court cannot be certain without knowing the extent of the parties' marital and nonmarital estate.
>
> . . .
>
> At a minimum, this Court must require these parties to submit verified financial disclosures, which set values on the numerous business entities and the assets held within each. Without this information, the Court cannot possibly decide whether the parties' PSA is conscionable.
>
> On its face, the PSA may appear as a conscionable agreement because Ms. Werner received a multimillion dollar share of the marital estate. However, without verified disclosure statements before it, the court still could not determine whether the agreement was conscionable. Ms. Werner has grave suspicions that the agreement was unconscionable since Dr. Crowe retained 100% of Owensboro Dermatology Associates, P.S.C.; Dermatology Property Management, LLC; and Microcap Insurance Company, Inc., and none of those businesses were ever valued by Dr. Crowe under oath for this Court's review. Vicky Lang, a certified public accountant who is accredited in Business Valuation by the American Institute of Certified Accountants was

-8-

recently retained by Ms. Werner. **Exhibit B – Vicky Lange's Resume**. Having reviewed the 2016 income tax return for Owensboro Dermatology Associates, P.S.C., Vicky Lange found as follows:

Given that the revenues of the dermatology practice approximated $9.7 million and wages to staff exceeded $3.1 million, this is a very large practice with multiple non-physician owner services providers, such as nurse practitioners providing direct patient care and procedures. In dermatology practices, procedures such as BOTOX are often performed by nurse practitioners and other mid-level providers.

The large practice revenues and salaries suggest that a portion of Owensboro Dermatology PSC's goodwill is enterprise goodwill.

Another indication of value pertains to fact [sic] that the practice owns depreciable assets (equipment, fixtures, improvements, etc.) with a cost (or other depreciable basis) of $4,226,477) (Schedule L, line 10a). This is an indication that the practice likely has a tangible value in addition to the goodwill value.

**Exhibit C – Vicky Lange's Affidavit**. Further, Dr. Crowe was allotted $253,672 of income from Dermatology Property Management in 2016, alone, which suggests this asset also has value. In addition, numerous businesses [sic] entities were not discussed in the parties' PSA, and Dr. Crowe has effectively retained the entire marital interest in same. Vicky Lange's affidavit identifies at least six (6) additional businesses owned by the parties per their 2016 tax return that went

unaddressed in the PSA. Mrs. Lange concluded that the parties owned the following businesses in 2016:

      a. EXECUTIVE BENEFIT INVESTMENTS (Supporting schedule – Line 28 of Sch. E)

      b. CROWES NEST CAPTIVE LLC (Supporting schedule – Line 28 of Sch. E)

      c. CROWES NESTS INVESTMENTS LLC (Ky Form 725)

      d. ADVANCED AESTHETICS LLC (KY Form 725)

      e. HENDERSON DEMATOLOGY [sic] PLLC (KY Form 725)

      f. ADVANCED AESTHETICS LLC (KY Form 725).

As Ms. Werner's attached affidavit attests (Exhibit D), she has had nothing to do with and does not know what has been done with these assets post-decree. It is indisputable that she has received nothing from them.

. . .

By all accounts, Dr. Crowe has retained and controlled each of these businesses and its assets post decree. It is unknown both to Ms. Werner and this Court whether these businesses have any value. As such, on its face, it appears that this Court likely would not have found the agreement to be conscionable had it known the true value of all the marital assets because Dr. Crowe has walked away with a grossly inequitable share of the marital estate. Until this Court requires Dr. Crowe to submit a Final Verified Disclosure, Ms. Werner will not be able to

adequately and specifically address full [sic] extent of the inequitable nature of the PSA.

To allay her "grave suspicions," Werner also filed what she styled as a "motion to permit discovery while 60.02 motion is pending." There, after largely restating the substance of her CR 60.02 motion set forth above, she asked the family court:

> [T]o permit her to conduct discovery and to obtain appraisals so that this court can ascertain the values and relevant facts of each business entity owned by the parties, under oath, at the time of dissolution that either were undervalued or undisclosed. Without same, this Court could not possibly determine the conscionability of the parties' PSA.

At a February 17, 2020 hearing, the family court questioned Werner's counsel about Werner's "motion to permit discovery while [a] 60.02 motion is pending." It asked whether the goal of her motion was, paradoxically, to reopen the underlying proceedings for the purpose of allowing Werner to conduct open-ended discovery that *might* lead to evidence of fraud which, in turn, *might* justify reopening the underlying proceedings based upon fraud. The relevant part of their exchange was as follows:

> COURT: In essence, what you're asking me is saying, "Please set it aside," then we're going to look at it again, then – to decide whether or not it should be set aside or not.
>
> COUNSEL: Well, I look at it a little differently. I mean, my – and I thought if I were a judge trying to look at this

-11-

case, I'd say, well, tell me what I – you keep telling me what I should have had when the decision of conscionability was made, and so if we took a little discovery, we could tell the court. This is what you would have had or should have had when the decision was made, although I understand, of course, you were not part of that. But you at least have a list of assets under oath so we know that there's not a million dollars in a foreign country, for example. I don't think there is. I don't want to imply that there is, but you at least have a list of assets with people swearing to a complete disclosure, and then you would have some discovery that would – through documentation, would provide the numbers so that you could do a comparison and say, "Yes, this was conscionable," or "This was not conscionable at the time." "Yes, there was misrepresentation" or "there wasn't a misrepresentation." I think that would be helpful.

In summary, Werner acknowledged that during her roughly sixteen months of pre-settlement negotiations with Crowe, while she was represented by counsel, Crowe had provided her documentation regarding the extent of their marital estate, and that she had never questioned it or otherwise sought formal discovery. Werner also recognized that in the interrogatories and verified acknowledgement she filed with the family court prior to its final decree, she had sworn under oath that she and Crowe had fully disclosed to one another all information relevant to their marital assets and debts. Nevertheless, approximately one year after the family court had resolved the division of their marital estate through a final decree, Werner then represented to the family court that, contrary to her pre-decree sworn statement, she had *no* way of knowing the value of any

marital assets associated with Crowe's businesses.  Further, Werner represented that she had hired an accountant to review the documents Crowe had provided her during their negotiations, as well as the tax return that she had jointly filed with Crowe in 2016; and the accountant's resulting opinion had caused her to *suspect* Crowe may not have divulged the full extent or proper value of their marital estate during their pre-settlement negotiations.  Therefore, Werner was invoking CR 60.02 to reopen discovery and garner evidence to ascertain, in the words of her counsel, whether "there was a misrepresentation or there wasn't a misrepresentation."

Upon consideration, the family court denied Werner's motion.  Before discussing the substance of its reasoning, however, it is important to revisit what Werner was required to demonstrate below, and the limitations upon granting this type of relief:

> A party alleging fraud under CR 60.02(d) has the burden of proving, by clear and convincing evidence, that the opposing party's procurement of the court's prior order was achieved by fraud or deceit.  *See Rice v. Dowell*, 322 S.W.2d 468 (Ky. 1959).  The moving party must essentially prove that the opposing party's conduct outside of the trial itself somehow prevented the moving party from appearing or presenting fully and fairly its side of the case.  *See* 7 Ky. Prac. R. Civ. Proc. Ann. Rule 60.02 (6th ed. 2012).

*Ipock v. Ipock*, 403 S.W.3d 580, 585 (Ky.App. 2013).  Additionally, relief under CR 60.02:

-13-

is an extraordinary and residual remedy to correct or
vacate a judgment upon facts or grounds, not appearing
on the face of the record and not available by appeal or
otherwise, which were discovered after the rendition of
the judgment without fault of the party seeking relief.

*Harris v. Commonwealth*, 296 S.W.2d 700, 701 (Ky. 1956). The Kentucky

Supreme Court has further stated that:

The purpose of CR 60.02 is to bring before a court errors
which (1) had not been put into issue or passed on, and
(2) were unknown and could not have been known to the
moving party by the exercise of reasonable diligence and
in time to have been otherwise presented to the court.

*Young v. Edward Technology Group, Inc.*, 918 S.W.2d 229, 231 (Ky.App. 1995).

If the party pursuing relief under CR 60.02 could have raised the issue prior to

judgment or could have followed the appropriate channels for a direct appeal but

neglected to do so, relief from judgment under CR 60.02 is not available. *Board of*

*Trustees of Policemen's and Firemen's Retirement Fund of City of Lexington v.*

*Nuckolls*, 507 S.W.2d 183, 186 (Ky. 1974).

With that said, the substance of the family court's ruling, as set forth

in its March 26, 2020 dispositive order, focused upon several points. First,

Werner's post-decree claim of ignorance about the extent and value of the marital

estate she shared with Crowe conflicted with her pre-decree sworn statements of

record to the contrary. Second, Werner's complaints about the omissions or

-14-

valuations of the various business entities were matters that could and should have

been raised prior to the entry of the decree.  The family court explained:

> [Werner] claimed only three (3) businesses were
> addressed in the PSA, but that she hired an expert CPA
> who found six additional businesses based on the 2016
> tax returns that were not addressed by the PSA and that
> [Crowe] retained 100% of these businesses.  However,
> both [Werner] and her attorney had copies of the 2016
> tax returns so they had constructive, if not actual,
> knowledge of these businesses and never said anything
> about them not being listed all during the months of
> negotiations.  In addition, [Werner] even made
> corrections and notes on drafts of the PSA and never
> made a note or asked why those other businesses were
> not included or asked that they BE included.
>
> In her motion, [Werner] also argued that there were no
> values listed for the three businesses that were included
> in the PSA and now claims they were deliberately
> undervalued.  However, the Court notes that [Werner's]
> own expert CPA affidavit cites documents between the
> parties' attorneys that discuss the value of the
> businesses.[3]  Again, she never mentioned this lack of
> valuation in her notes or corrections or additions to the
> PSA drafts and never asked that values be included.

Third, the family court found Werner failed to carry her burden to

demonstrate Crowe had prevented her from appearing or presenting fully and fairly

her side of the case.  In that respect, its analysis addressed Werner's additional

---

[3] As indicated, in support of her opinion, Lange (Werner's expert accountant) examined the parties' joint 2016 income tax return, as well as the 2016 income tax return of Owensboro Dermatology PSC.  There is no contention that Werner was not provided these documents prior to when the family court entered its decree.

contention, as set forth in her CR 60.02 motion and an accompanying self-serving

affidavit, that she had executed the PSA due to Crowe's "coercion," explaining:

> [Werner] does say that she was the victim of undue influence and overreaching when it came to her agreement to the PSA. She claims [Crowe] pressured her into signing, that he would e-mail her directly and tell her not agreeing to the PSA would mean "chronic litigation" that would hurt her in the long run, and that there would be no "large check to buy a house" and that she would end up living in a small apartment. She claims he also told her that she would never see a "significant payout" of their assets for one to two years, and that he copied their adult children on these e-mails to try to pressure her to agree. She also claims that he tried to cause a rift between her and her attorney so that she would disregard advice of counsel, that he threatened to withdraw the payment check if she did not agree, and said they would be forced into "a public, court mandated divorce." [Werner] further claimed in an affidavit that she suffered from PTSD and depression, that [Crowe] had always been verbally abusive to her, and that he typically used their children to manipulate her into doing what he wanted.
>
> In his Response to [Werner's] Motion to Vacate, [Crowe] makes the point that she was represented by "an experienced and very competent family law attorney" and received a lump sum of $1,000,000 plus five annual payments of $100,000 via a promissory note and no marital debt. He argued that neither a preliminary or final Verified Disclosure Statement was required to be filed in the record and that at any rate, they had both agreed to waive the filing. He stated that he had provided her with documents relating to all assets, including the 2016 tax returns, and he was aided by his accountant in this.
>
> . . .

> [Crowe] goes on in his Response to cite text messages from [Werner] that show she knew about all marital assets and even had a copy of a rough draft of the PSA where she had made notes and corrections and even added in things she wanted included. He notes that [Werner] did this <u>herself</u> and sent it to him directly and bypassed both attorneys. He argues that they exchanged documents and negotiated for sixteen (16) months and she had all the information she needed during that time.

Now on appeal, Werner argues the family court abused its discretion by refusing to reopen the decree based upon CR 60.02(d) and what she asserted in her motion in that respect. Werner argues the facts of this case are analogous to those presented in *Terwilliger v. Terwilliger*, 64 S.W.3d 816 (Ky. 2002). There, the Kentucky Supreme Court determined that a decree was properly reopened on the basis of CR 60.02(d) where, during dissolution proceedings, a husband had persuaded his wife to (1) proceed without counsel; (2) enter a settlement agreement that he had drafted; and (3) enter the agreement less than three months after he had filed the dissolution petition after representing to her that she needed to do so immediately or risk losing her home to creditors. *Id.* at 817-18. A decree was entered consistently with their agreement, and the wife's share of the marital property consequently consisted of the marital residence, valued at $67,000 and subject to a $51,000 mortgage; a vehicle valued at $1,800; $2,550 in other cash and assets; some stock valued by her husband at $11,000; and $6,000 in credit card debt. *Id.* at 817. The husband received ninety percent of the stock of several

-17-

corporations, which he valued at $100,000. Thereafter, in her post-judgment motion to set aside the decree based upon CR 60.02(d), the wife presented evidence demonstrating that her husband had knowingly undervalued marital assets. Specifically, within two weeks of the signing of the settlement agreement and before the divorce decree was entered, the husband told a potential buyer that one of the corporations was worth $1.7 million dollars, and after the dissolution was final, he sold it for $1.6 million. *Terwilliger*, 64 S.W.3d at 817.

We disagree, and we find no abuse of the family court's discretion. *Terwilliger* is distinguishable from this case for several reasons. Here, for example, Werner initiated the underlying divorce proceedings. She was represented by separate counsel at all relevant times. The evidence of record demonstrates, as the family court noted, that the PSA Werner entered was a collaborative endeavor in which she participated. Werner's decision to enter the PSA was also not immediate, nor the product of what evidence – as opposed to speculation or belief – demonstrates was a false threat of insolvency. Indeed, what Werner presents as evidence of "coercion" or undue influence – namely, Crowe's alleged threats of delays, disappointments, or embarrassments that might result from "chronic litigation" or "a public, court mandated divorce" – cannot be considered legally sufficient to warrant setting aside a judgment. *All* parties considering settlement do so based upon a consideration of the adverse

-18-

consequences that might result if the action proceeds and they do not prevail on the merits.

The most critical difference, however, is that in support of her CR 60.02 motion, the wife in *Terwilliger* presented *evidence* that her husband had knowingly undervalued a marital asset during their divorce proceedings to induce her to enter their property settlement agreement. Werner, on the other hand, presents only her "grave suspicions" stemming from an expert opinion which reexamined evidence that had been available to her prior to the family court's decree. That is not enough to warrant reopening a decree – or to warrant reopening discovery to determine whether a decree *should* be reopened – because fraud is not presumed, speculation and conjecture are insufficient to warrant CR 60.02 relief, and a new opinion reexamining previously available evidence is not itself new evidence capable of invoking the rule. *See United Parcel Service Co. v. Rickert*, 996 S.W.2d 464 (Ky. 1999) (regarding fraud); *Foley v. Commonwealth*, 425 S.W.3d 880, 887-88 (Ky. 2014) (explaining "mere speculation or conjecture" cannot be the basis of CR 60.02 relief).

Largely illustrating this point is a case the *Terwilliger* Court discussed in the context of its analysis, *McMurry v. McMurry*, 957 S.W.2d 731 (Ky.App. 1997). *See Terwilliger*, 64 S.W.3d at 819. There, Mrs. McMurry's CR 60.02(d) motion to reopen was found to have been properly denied by the trial court. Mrs.

McMurry alleged that she had relied to her detriment upon her husband's misrepresentations concerning the true value of the couple's marital assets. Roughly analogous to what Werner asserts relative to Crowe, Mrs. McMurry contended that her husband, Gordon,

> misrepresented to her that his medical practice had no value, that the couple's marital residence and real estate had a negative value, and that his income in 1991 was substantially lower than it had been in previous years. She claim[ed] that Gordon took advantage of her emotional state and led her to believe that they were on the verge of bankruptcy. She maintain[ed] that she relied on his misrepresentations in assenting to the property settlement agreement.

*McMurry*, 957 S.W.2d at 732. Despite Mrs. McMurry's claims about her "emotional state," however, this Court affirmed the circuit court's denial of Mrs. McMurry's motion to reopen because, as we explained:

> The record does not support her contention that Gordon attempted to or concealed and misrepresented any information relating to the medical practice or the couple's finances. This information was discoverable and could have been obtained through formal discovery if Mary had elected to do so in lieu of entering into the property settlement agreement without conducting an independent inquiry of her own. There is no evidence in the record—nor is any offered by the appellant—to indicate that Gordon acted in a fraudulent manner. Bare allegations will not suffice to establish "fraud affecting the proceedings." In the case *sub judice*, Mary has not met her burden of proving that Gordon's actions rise to the level of fraud.

*Id*. at 733.

Here, as indicated, the crux of the family court's ruling was that if Werner had exercised reasonable diligence, the issues she raised in her CR 60.02 motion could and should have been raised prior to the entry of its decree or in a direct appeal. Specifically, Werner *knew or should have known*, prior to the entry of the decree, that: (1) Crowe had not provided her a sworn valuation of his interests in Owensboro Dermatology Associates, P.S.C., Dermatology Property Management, LLC, and Microcap Insurance Company, Inc.; and (2) the "marital assets" allegedly omitted from the PSA *existed* (*i.e.*, the six "additional businesses owned by the parties per their 2016 tax return" that accountant Vicky Lange identified in her affidavit, which Werner acknowledged possibly had no value), as they were listed in the 2016 tax return Werner filed jointly with Crowe that had been in her attorney's possession during their months of pre-settlement negotiations.

Accordingly, Werner had the same reasons to conduct formal discovery, insist upon verified disclosures, and litigate the conscionability of the PSA *before* the family court entered its decree as she did *after* the family court entered its decree. Werner produces no evidence indicating Crowe prevented her from conducting formal discovery, or that he otherwise denied any request she made to him for relevant documentation. By electing not to conduct formal discovery, Werner placed herself in the position she now finds herself post-

-21-

judgment in which she is entertaining "grave suspicions" that Crowe misrepresented or concealed assets and asking the family court to reopen discovery to allow her to find proof in service of her theory. As *McMurry* illustrates, this does not justify CR 60.02 relief.

Over the course of the CR 60.02 proceedings, Werner also raised two points that the family court did not specifically address in any order. In Werner's "motion to permit discovery while 60.02 motion is pending," she questioned the validity of a $1.6 million debt that the PSA recited Crowe owed to the Crowe Dynasty Trust – a debt that factored into their division of assets. In her subsequent CR 59.05 motion, she also represented:

> Dr. Crowe's businesses are the subject of IRS lawsuits wherein the IRS has found that Dr. Crowe has underreported income by reason of captive insurance premium deductions disallowed to the tune of hundreds of thousands of dollars resulting in an increase in tax of $210,147 for the tax year 2015, which means the values of the businesses Owensboro Dermatology Associates, PSC and Dermatology Property Management, LLC are even greater than Dr. Crowe suggests.

That said, Werner was aware of the $1.6 million debt in question prior to the entry of the decree, passed on the opportunity to contest it at that time, and presents no evidence – new or otherwise – disputing its legitimacy. As for the "IRS lawsuits" concerning Crowe's business interests, she likewise indicates those lawsuits remain pending and offers nothing with respect to whether or how they

-22-

may have concluded.  In short, these are more examples of speculation and conjecture that have no bearing upon our analysis.  We find no error or abuse in the family court's decision to deny Werner's CR 60.02 motion.

The final issue Werner raises on appeal concerns two Merrill Lynch accounts that were titled in her name and Crowe's as tenants in common.  They were not specifically disposed of in the PSA or the decree, but the family court subsequently awarded them to Crowe pursuant to an October 23, 2020 order.  As Werner represents in her appellate brief:

> [T]hese accounts were the Merrill Lynch Joint Checking #XXX-31266 titled "Michael J. Crowe MD AND Ms. Werner W. Crowe TIC" (tenants in common) valued at $5,909.96 on July 18, 2020, and Merrill Lynch Joint Long-Term Growth #XXX-31267 titled "Michael J. Crowe MD and Ms. Werner W. Crowe TIC" (tenants in common) valued $227,639.87 as of July 18, 2018.

Werner argues that because the PSA and decree did not specifically address these accounts, they remained marital property; and that because neither she nor Crowe directly appealed the non-inclusion of these accounts in the decree, "the Trial Court lost jurisdiction to enter a subsequent order to award these assets to Dr. Crowe."

We disagree.  To be sure, Werner correctly notes that the PSA and decree did not address these accounts.  However, the remainder of her argument

lacks merit. When the family court "awarded" these accounts to Crowe, its explanation was as follows:

> The Court finds that the parties, in open Court at the January 28, 2019 hearing, agreed that two (2) Merrill-Lynch cash management accounts were included in Paragraph 3.1 of the July 5, 2018 Property Settlement Agreement, and were awarded to [Crowe] and considered when calculating the money paid and to be paid to [Werner] as an equalization of marital assets. The Court further finds that it inadvertently omitted mentioning these accounts in its February 18, 2019 Order following the January 28, 2019 hearing. [Werner's] Motion for Declaration of Ownership and Equal Distribution of Two Merrill Lynch Accounts not Divided in PSA and Motion for Account Division of these accounts is DENIED.

Again, Werner's argument is only that the family court lacked jurisdiction to amend its decree consistently with their open-court settlement. However, her argument is misguided. Utilizing CR 60.02 is not the only means of reopening or modifying a decree; Werner and Crowe were also permitted to reopen or modify it "by a voluntary, arms-length settlement;" and the family court had continuing, equitable jurisdiction to effectuate their settlement so long as "such a settlement is proved to the satisfaction of the trial court with reasonable certainty." *Brown v. Brown*, 796 S.W.2d 5, 8 (Ky. 1990). Werner does not contest the substance of what the family court related in its order, *i.e.*, that in open court, during the January 28, 2019 hearing, she and Crowe settled this issue. Therefore,

-24-

she provides this Court no reason to disturb the family court's decision in this regard.

Accordingly, we affirm the Daviess Family Court's denial of Werner's motion for CR 60.02 relief to set aside the decree dividing Crowe's and Werner's marital property.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Allen P. Dodd III
Allen McKee Dodd
Louisville, Kentucky

BRIEF FOR APPELLEE:

Christopher G. Safreed
Owensboro, Kentucky