RENDERED: FEBRUARY 10, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0672-MR

GARLAND L. MASDEN                                                    APPELLANT

v.
APPEAL FROM HARDIN FAMILY COURT
HONORABLE PAMELA K. ADDINGTON, JUDGE
ACTION NO. 20-CI-01443

MARY JAMES MASDEN                                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, DIXON, AND TAYLOR, JUDGES.

CETRULO, JUDGE: Garland Masden ("Garland") and Mary Masden ("Mary")

were married on October 14, 1982. Garland filed a divorce action in the Hardin

Family Court on October 15, 2020. The briefs indicate that they had previously

filed for divorce in another county and then reunited at some point. However, that

is not alleged in this divorce petition itself. Regardless, the parties agree that they

had marital problems throughout this long-term marriage, and on January 14, 2020,

each executed a post-nuptial agreement. The stated intent of the agreement was to establish ownership and division of property in the event of any divorce or the death of either party, specifically:

> The Parties each acknowledge and confirm that we have both been advised to obtain separate counsel for purposes of reviewing and advising us on the terms of this agreement. We have [had] sufficient time and opportunity for each of us to obtain our own separate counsel and have declined to do so. We have read, understand and agree to the terms of this Post-nuptial Agreement, and that the same is fair and conscionable. We waive any right to challenge the conscionability of the agreement at a later date, regardless of any change in circumstances.

Eight months later, Garland filed a petition for divorce asking for the family court to "abide by the agreement of the parties in regard to the distribution of property and find it not unconscionable." In her response, Mary asserted that the parties had a post-nuptial agreement dated January 14, 2020 and asked that the family court "abide by the agreement in regard to the distribution of the property and find it not unconscionable."

On December 11, 2020, Mary filed a motion asking the family court to adopt the post-nuptial agreement as the agreement of the parties; incorporate it into a decree; and waive mediation. Garland objected to this. The crux of his objection seemed to be that he did not fully understand the nature of the document he had signed due to diminished mental capacity. Both parties are in their 80s. He

further argued, through his attorney, that the list of property attached to the agreement signed by both parties was not part of the agreement when he signed it and that the attorney who drafted the agreement was related to Mary.

Based upon these filings, the family court conducted a full hearing in April of 2021, with testimony from the parties, family members, and a friend of Garland's. In its order of May 13, 2021, the family court held that the agreement did constitute a binding agreement of the parties and should be incorporated into any final decree of dissolution subsequently entered. The order further contained the CR[1] 54.02 recitation that this was a final and appealable order and there was no reason for delay. This appeal followed.

## STANDARD OF REVIEW

The findings of fact by the family court following a bench trial "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01; *Patmon v. Hobbs*, 280 S.W.3d 589, 593 (Ky. App. 2009). We review the family court's findings with regard to issues of law *de novo*. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001).

---

[1] Kentucky Rule of Civil Procedure.

# LEGAL ANALYSIS

By agreement, husbands and wives in Kentucky may define their rights in each other's property, regardless of any right that would otherwise be excluded or conferred by KRS[2] 403.190. *Gentry v. Gentry*, 798 S.W.2d 928 (Ky. 1990). The first limitation upon parties who propose or sign an ante-nuptial or post-nuptial agreement is a requirement of full disclosure. Before parties may be bound by agreements which affect their substantial rights upon dissolution of marriage, it should appear that the agreement was free of any material omission or misrepresentation. *Edwardson v. Edwardson*, 798 S.W.2d 941 (Ky. 1990). The allegations by Garland as to any material omission or misrepresentation were basically that the list of assets was in a different font from the agreement itself and that the document was not page-numbered. Counsel also argued that the document was drafted by an attorney related to Mary.

The family court considered both of these allegations, and questioned Garland as to the items on the list of which he was clearly familiar, and which he confirmed were each person's separate property. The family court further noted that none of the pages were numbered or initialed, but confirmed that both parties had signed the agreement in the presence of a notary and that there were other documents throughout the marriage prepared by the same attorney. As was the

---

[2] Kentucky Revised Statute.

case in *Blue v. Blue*, 60 S.W.3d 585 (Ky. App. 2001), the appellant herein asserts general irregularities, but did not present any evidence to amount to fraud, duress, or misrepresentation. *Id*. at 588.

The family court did not find any evidence that there was any material omission or fraud in the agreement and specifically noted that Garland had sold many of "his" assets since entering into the agreement. Garland did not seem to think that was inconsistent with his assertion that the agreement should not be enforced as to the items on Mary's list. At no time during the testimony of Garland did he state that he was not aware of the contents or intent of the agreement or that the agreement was obtained by fraud.

The second limitation to be observed is that the agreement must not be unconscionable at the time enforcement is sought. *Edwardson*, 798 S.W.2d at 945. As the appellate courts have often noted, the family courts are familiar with the concept of unconscionability by virtue of KRS 403.180 and KRS 403.250. *Id*. at 945 n.2. It is clear that the Hardin Family Court properly followed the law and reviewed the post-nuptial agreement to determine whether it was unconscionable at the time it was entered into and found no basis to so hold.

The law promotes the settlement of disputes by agreement, and the law favors the stability in such agreements. *Peterson v. Peterson*, 583 S.W.2d 707 (Ky. App. 1979). The parties entered into this agreement less than one year prior

to the filing of the petition for dissolution. The family court looked at the facts and circumstances to see if they had changed since the agreement was executed so as to make its enforcement unfair and unreasonable. The opponent of the agreement has the burden of proving the agreement is invalid. *Blue*, 60 S.W.3d at 589 (citing *Rupley v. Rupley*, 776 S.W.2d 849 (Ky. App. 1989)). Finally, it is well established that the family court is in the best position to judge the circumstances surrounding the agreement, and we give deference to its exercise of its discretion, unless those findings are clearly erroneous. *Shraberg v. Shraberg*, 939 S.W.2d 330, 333 (Ky. 1997).

The basis for the contention that the agreement was unconscionable was that Garland had suffered cognitive decline in recent years and did not understand the ramifications of the agreement when he signed it. However, at the lengthy hearing in this matter, Garland testified that he did sign the agreement and he clearly exhibited knowledge of the ramifications of same. He acknowledged that he went to the bank where his accounts were maintained with Mary to have the agreement notarized. He responded to the questions of the family court as to the assets listed in his column and Mary's column, confirming that those were each separate assets of the parties. He admitted that he had already sold most of the items listed in his column. While there was testimony from his daughter and a sister that "he had good days and bad days," there was no testimony from any

expert that he had a neurological, mental, or cognitive decline at the time that he signed the agreement. Moreover, there is no suggestion that he was not in command of his full faculties at the time he filed the petition for dissolution, a few months later. In fact, his own testimony at the hearing confirmed that he did understand the nature and intent of the document he had signed. He simply did not believe it was fair, although he had acted consistent with that agreement himself. Garland also testified that the real estate assigned to Mary by the agreement was in fact her non-marital property, confirming his knowledge of the extent of the parties' assets.

The family court also heard testimony from Garland's close friend and business partner, David Allgood ("Allgood"). Allgood testified that Garland had shared with him the fact that the couple had signed a post-nuptial agreement. He had even shown it to Allgood shortly after he signed it, stating that "what was his, was his, and what was hers, was hers." While there was testimony that Garland's cognitive capabilities had declined in recent years, both parties were in their 80s, and both parties were continuing to drive, conduct business, execute legal documents, and sell properties at the time of the agreement. Again, the family court was in the best position to judge all the circumstances of this agreement and did so. Giving due regard to the family court's opportunity to examine and judge

the credibility of all of the witnesses, we do not find that the ruling was clearly erroneous.  We therefore affirm the order of the Hardin Family Court.


ALL CONCUR.


BRIEF FOR APPELLANT:

Phyllis K. Lonneman
Elizabethtown, Kentucky

BRIEF FOR APPELLEE:

Nick L. Pearl
Elizabethtown, Kentucky